**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
Charles H. Linehan (#307439)
Pavithra Rajesh (#323055)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Tyler Dennee*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER DENNEE, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>        v.<br><br>SLACK TECHNOLOGIES, INC., STEWART BUTTERFIELD, ALLEN SHIM, BRANDON ZELL, ANDREW BRACCIA, EDITH COOPER, SARAH FRIAR, JOHN O'FARRELL, CHAMATH PALIHAPITIYA, and GRAHAM SMITH,<br><br>                Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff Tyler Dennee ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Slack Technologies, Inc. ("Slack" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Slack; and (c) review of other publicly available information concerning Slack.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Slack Class A common stock pursuant and/or traceable to the Company's registration statement and prospectus (collectively, the "Registration Statement") for the resale of up to 118,429,640 shares of its Class A common stock whereby Slack began trading as a public company on or around June 20, 2019 (the "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2.      The Company offers a business technology platform called Slack that allows users to share and aggregate information from other software, take action on notifications, and advance workflows in a multitude of third-party applications.

3.      On June 20, 2019, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. The Company registered for the resale of up to 118,429,640 shares of Class A common stock by registered shareholders at a reference price of $26.00.  According to the Registration Statement, the resale of the Company's stock was not underwritten by any investment bank and the registered stockholders would purportedly elect whether or not to sell their shares. Such sales, if any, would be brokerage transactions on the New York Stock Exchange ("NYSE"), and Slack would purportedly not receive any proceeds from the sale of shares of Class A common stock by the registered stockholders.

4.     On September 4, 2019, Slack reported its second-quarter fiscal 2019 results and issued guidance for the third quarter, expecting a wider loss than analysts predicted.

5.     On this news, the Company's share price fell $3.69 per share, nearly 12%, over two consecutive trading sessions to close at $27.38 per share on September 6, 2019, thereby injuring investors.

6.     By the commencement of this action, Slack's stock traded as low as $25.72 per share, a significant decline from the $26.00 per share reference price for the Offering.

7.     The Registration Statement was false and misleading and omitted to state material adverse facts. Specifically, Defendants failed to disclose to investors: (1) that the Company's Slack Platform was susceptible to recurring service-level disruptions; (2) that such disruptions were increasingly likely to occur as the Company scaled its services to a larger user base; (3) that the Company provides credits even if a customer was not specifically affected by service-level disruptions; (4) that, as a result, any service-level disruptions would have a material adverse impact on the Company's financial results; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

1 United States mail, interstate telephone communications, and the facilities of a national securities

2 exchange.

3 **PARTIES**

4          13.     Plaintiff Tyler Dennee, as set forth in the accompanying certification, incorporated

5 by reference herein, purchased or otherwise acquired Slack securities pursuant and/or traceable to

6 the Registration Statement issued in connection with the Company's Offering, and suffered

7 damages as a result of the federal securities law violations and false and/or misleading statements

8 and/or material omissions alleged herein.

9          14.     Defendant Slack is incorporated under the laws of Delaware with its principal

10 executive offices located in San Francisco, California. Slack's Class A common stock trades on

11 the NYSE under the symbol "WORK."

12         15.     Defendant Stewart Butterfield ("Butterfield") was, at all relevant times, the Chief

13 Executive Officer and a director of the Company, and signed or authorized the signing of the

14 Company's Registration Statement filed with the SEC.

15         16.     Defendant Allen Shim ("Shim") was, at all relevant times, the Chief Financial

16 Officer of the Company, and signed or authorized the signing of the Company's Registration

17 Statement filed with the SEC.

18         17.     Defendant Brandon Zell ("Zell") was, at all relevant times, the Chief Accounting

19 Officer of the Company, and signed or authorized the signing of the Company's Registration

20 Statement filed with the SEC.

21         18.     Defendant Andrew Braccia ("Braccia") was a director of the Company and signed

22 or authorized the signing of the Company's Registration Statement filed with the SEC.

23         19.     Defendant Edith Cooper ("Cooper") was a director of the Company and signed or

24 authorized the signing of the Company's Registration Statement filed with the SEC.

25         20.     Defendant Sarah Friar ("Friar") was a director of the Company and signed or

26 authorized the signing of the Company's Registration Statement filed with the SEC.

27         21.     Defendant John O'Farrell ("O'Farrell") was a director of the Company and signed

28 or authorized the signing of the Company's Registration Statement filed with the SEC.

22.     Defendant Chamath Palihapitiya ("Palihapitiya") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23.     Defendant Graham Smith ("Smith") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24.     Defendants Butterfield, Shim, Zell, Braccia, Cooper, Friar, O'Farrell, Palihapitiya, and Smith are collectively referred to hereinafter as the "Individual Defendants."

**CLASS ACTION ALLEGATIONS**

25.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Slack Class A common stock pursuant and/or traceable to the Registration Statement.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

26.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Slack's shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Slack shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Slack or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Slack; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

31.     Slack offers a business technology platform that allows users to share and aggregate information from other software, take action on notifications, and advance workflows in a multitude of third-party applications.

### The Company's False and/or Misleading
### Registration Statement and Prospectus

32.     On May 31, 2019, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on June 7, 2019.

33.     On June 20, 2019, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. The Company registered for the resale of up to

118,429,640 shares of Class A common stock by registered shareholders at a reference price of $26.00. According to the Registration Statement, the resale of the Company's stock was not underwritten by any investment bank and the registered stockholders would purportedly elect whether or not to sell their shares. Such sales, if any, would be brokerage transactions on the New York Stock Exchange ("NYSE"), and Slack would purportedly not receive any proceeds from the sale of shares of Class A common stock by the registered stockholders.

34.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

35.     Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

36.     The Registration Statement touted the advantages of the Company's Slack platform, stating in relevant part:

> ***Our vision is a world where organizational agility is easy to achieve, regardless of an organization's size***
>
> As a result of the alignment teams and organizations are able to maintain while continuously adapting to respond in increasingly dynamic environments, less effort and energy is wasted and the human beings on those teams are able to fully utilize their intelligence and creativity in pursuit of the organization's shared objectives.
>
> ***Slack makes existing software more useful and accessible***
>
> As a flexible platform for routing information of all kinds, Slack integrates horizontally with thousands of other applications, from those provided by companies like Google, Salesforce, ServiceNow, Atlassian, and Dropbox to the proprietary line-of-business applications developed by organizations for their own internal use. This functionality enables users to securely interact with all of these applications in one familiar user interface. We enable organizations that use Slack to get more out of their software investment.
>
> ***Slack drives increased organizational agility***
>
> As a new layer of business technology that brings together an organization's people, applications, and data, Slack improves organizational alignment. In a December 2018 survey that we conducted with more than a thousand U.S.-based users who had been using Slack for at least one month, which we refer to as our

2018 Survey, 87% reported that Slack improved communication and collaboration inside their organization.

37.     The Registration Statement noted that service-level disruptions could result from the technology and infrastructure that support the Company's Slack platform, stating in relevant part:

> **If there are interruptions or performance problems associated with the technology or infrastructure used to provide Slack, organizations on Slack may experience service outages, other organizations may be reluctant to adopt Slack, and our reputation could be harmed.**
>
> Our continued growth depends, in part, on the ability of existing and potential organizations on Slack to access Slack 24 hours a day, seven days a week, without interruption or degradation of performance. We have in the past and may in the future experience disruptions, data loss, outages, and other performance problems with our infrastructure due to a variety of factors, including infrastructure changes, introductions of new functionality, human or software errors, capacity constraints, denial-of-service attacks, ransomware attacks, or other security-related incidents. In some instances, we may not be able to identify the cause or causes of these performance problems immediately or in short order. We may not be able to maintain the level of service uptime and performance required by organizations on Slack, especially during peak usage times and as our user traffic and number of integrations increase. For example, we have experienced intermittent connectivity issues and product issues in the past, including those that have prevented many organizations on Slack and their users from accessing Slack for a period of time. If Slack is unavailable or if organizations are unable to access Slack within a reasonable amount of time, or at all, our business would be harmed. Since organizations on Slack rely on Slack to communicate, collaborate, and access and complete their work, which in many cases includes entire organizations that complete substantially all of their work functions on Slack, any outage on Slack would impair the ability of organizations on Slack and their users to perform their work, which would negatively impact our brand, reputation, and customer satisfaction, and could give rise to legal liability under our service level agreements with paid customers.
>
> Moreover, we depend on services from various third parties to maintain our infrastructure, including Amazon Web Services, or AWS. If a service provider fails to provide sufficient capacity to support Slack or otherwise experiences service outages, such failure could interrupt access to Slack by users and organizations, which could adversely affect their perception of Slack's reliability and our revenue and harm the businesses of organizations on Slack. Any disruptions in these services, including as a result of actions outside of our control, would significantly impact the continued performance of Slack. In the future, these services may not be available to us on commercially reasonable terms, or at all. Any loss of the right to use any of these services could result in decreased functionality of Slack until equivalent technology is either developed by us or, if available from another provider, is identified, obtained, and integrated into our infrastructure. If we do not accurately predict our infrastructure capacity requirements, organizations on Slack could experience service shortfalls. We may also be unable to effectively address capacity constraints, upgrade our systems as needed, and continually develop our technology and network architecture to accommodate actual and anticipated changes in technology.

Any of the above circumstances or events may harm our reputation, cause organizations on Slack to terminate their agreements with us, impair our ability to obtain subscription renewals from organizations on Slack, impair our ability to grow the base of users and organizations on Slack, subject us to financial penalties and liabilities under our service level agreements with our paid customers, and otherwise harm our business, results of operations, and financial condition.

38.     Regarding credits related to service disruptions, the Registration Statement stated, in relevant part:

> **We provide service level commitments under certain of our paid customer contracts. If we fail to meet these contractual commitments, we could be obligated to provide credits for future service, or face contract termination with refunds of prepaid amounts related to unused subscriptions, which could harm our business, results of operations, and financial condition.**
>
> Certain of our paid customer agreements contain service level agreements, under which we guarantee specified minimum availability of Slack. From time to time, we have granted credits to paid customers pursuant to the terms of these agreements. We do not currently have any material liabilities accrued on our balance sheet for these commitments. Any failure of or disruption to our infrastructure could make Slack unavailable to organizations on Slack. If we are unable to meet the stated service level commitments to our paid customers or suffer extended periods of unavailability of Slack, we may be contractually obligated to provide affected paid customers with service credits for future subscriptions, or paid customers could elect to terminate and receive refunds for prepaid amounts related to unused subscriptions. Our revenue, other results of operations, and financial condition could be harmed if we suffer unscheduled downtime that exceeds the service level commitments under our agreements with our paid customers, and any extended service outages could adversely affect our business and reputation as paid customers may elect not to renew and we could lose future sales.

39.     The Registration Statement was materially false and misleading and omitted to state: (1) that the Company's Slack Platform was susceptible to recurring service-level disruptions; (2) that such disruptions were increasingly likely to occur as the Company scaled its services to a larger user base; (3) that the Company provides credits even if a customer was not specifically affected by service-level disruptions; (4) that, as a result, any service-level disruptions would have a material adverse impact on the Company's financial results; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

### The Subsequent Disclosures

40.     On June 28, 2019, the Company's Slack platform suffered a global service outage that disrupted services for many users. Following the outage, Slack issued a bulletin stating that a

"fix ha[d] been rolled out and all features should be working normally." Furthermore, Slack assured investors that it was "working on preventative measures to ensure that this doesn't happen again in the future."

41.     On July 29, 2019, the Company's Slack platform suffered another large-scale service outage which disrupted services for more than 2,000 users.

42.     On September 4, 2019, Slack reported its second-quarter fiscal 2019 results and issued guidance for the third quarter, expecting a wider loss than analysts predicted. In a press release, the Company stated, in relevant part:

**Second Quarter Fiscal 2020 Financial Highlights:**

- Total revenue was $145.0 million, an increase of 58% year-over-year. Revenue was negatively impacted by ***$8.2 million of credits related to service level disruption in the quarter.***

- Calculated Billings was $174.8 million, an increase of 52% year-over-year.

- GAAP gross profit was $113.9 million, or 78.5% gross margin, compared to $80.7 million, or 87.7% gross margin, in the second quarter of fiscal year 2019. Non-GAAP gross profit was $126.3 million, or 87.1% gross margin, compared to $80.7 million, or 87.7% gross margin, in the second quarter of fiscal year 2019.

- GAAP operating loss was $363.7 million, or 251% of total revenue, compared to a $33.7 million loss in the second quarter of fiscal year 2019, or 37% of total revenue. GAAP operating loss includes $307.0 million of stock based compensation and related employer payroll taxes, primarily related to the satisfaction of the performance vesting condition on outstanding RSUs in connection with Slack's direct listing on June 20, 2019. Non-GAAP operating loss was $55.6 million, or 38% of total revenue, compared to a $32.0 million loss in the second quarter of fiscal year 2019, or 35% of total revenue.

- GAAP net loss per basic and diluted share was $0.98. Non-GAAP net loss per share was $0.14.

* * *

***Financial Outlook:***

For the third quarter of fiscal year 2020, Slack currently expects:

- Total revenue of $154 million to $156 million, representing year-over-year growth of 46% to 48%.

- Non-GAAP operating loss of $49 million to $47 million.

- Non-GAAP net loss per share of $0.09 to $0.08, assuming weighted average shares outstanding of 544 million.

CLASS ACTION COMPLAINT
9

1    (Emphasis added.)

2        43.     On a conference call held to discuss these results, Defendant Shim elaborated about

3    the service-level disruption, stating:

4        Revenue growth was above the high end of guidance despite an $8 million one-
         time revenue headwind from credits issued in the quarter related to service-level
5        disruption in the quarter. Our uptime was 99.9% or 3 nines in the quarter. But this
         was below our commitment of 99.99% or 4 nines. Service-level disruption of this
6        magnitude is unusual for us. Compounding the financial impact of the down time
         was an exceptionally generous credit payout multiplier, and our contracts dating
7        from when we were a very young company. We've adjusted those terms to be more
         in line with industry standards while still remaining very customer friendly. We do
8        not expect a revenue impact of this magnitude again.

9        44.     Moreover, Defendant Butterfield stated, in relevant part:

10       The last thing I want to note though, for the service credits, there is a bunch of
         things that we do with that are unusual besides what Allen mentioned, which is the
11       payout ratio. One is, customers don't have to request it, we just proactively give it.
         And almost no outages, I don't know every detail for this quarter but almost no
12       outages affect all customers, in fact most of them affect like 1% or 0.5% or 3% of
         customers in any given time. *And we give those service credits to every customer*
13       *even if they were not specifically affected.* So those policies are outrageously
         customer-centric, which is part of our background and our orientation. And that is
14       one of the reasons you see that effect. *It's not necessarily proportionate to the*
         *outage,* because if we had the same SLA as Salesforce or Microsoft or any of our
15       peers in the industry, we wouldn't have paid out anything because we would have
         hit the 3 9 they're committed to, it's our 4 9 and the rest of the policies that make a
16       difference.

17   (Emphasis added.)

18       45.     Additionally, Defendant Butterfield stated that the disruptions were attributable, at

19   least "distant[ly]" to issues with scaling Slack's services to encompass a greater user-load. In an

20   exchange with an analyst:

21       Analyst: I just had one follow up that was related to the downtime that you saw.
         Just wondering, I don't think you guys mentioned specifically what caused the
22       downtime, I was just wondering if you could share that with us.

23       Butterfield: Yes. What caused it answer depends how literal and specific we want
         to get. The actual answer might even be over my head in true technical terms. *But*
24       *if we want to move a little bit further afield from that the more distant answer is*
         *scaling.* So we continue to hit limits that we didn't realize were built into the
25       system. And at one point when were 8 people first getting started we thought Slack
         will be a great tool for 8-person software development team, and then we got our
26       first team with 100 users and we had to reimagine a whole bunch of stuff, not just
         technically but from the user experience. Then we got teams with 1,000 people and
27       then 10,000 and then we were well over 100,000 with several customers. *And*
         *we're still figuring some of those things out.* Having said that, this is a big area of

28

investment, we've made some great hires on the infrastructure side, we've put a lot more tooling in place, a lot more automated testing.

46.     On this news, the Company's share price fell $3.69 per share, nearly 12%, over two consecutive trading sessions to close at $27.38 per share on September 6, 2019, thereby injuring investors.

47.     By the commencement of this action, Slack's stock traded as low as $25.72 per share, a significant decline from the $26.00 per share reference price for the Offering.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act

### (Against All Defendants)

48.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

49.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

50.     The Registration Statement for the Offering was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

51.     Slack is the registrant for the Offering.  The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

52.     As issuer of the shares, Slack is strictly liable to Plaintiff and the Class for the misstatements and omissions.

53.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

54.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

55.     Plaintiff acquired Slack shares pursuant and/or traceable to the Registration Statement for the Offering.

56.     Plaintiff and the Class have sustained damages.  The value of Slack Class A common stock has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

### Violation of Section 15 of the Securities Act

### (Against the Individual Defendants)

57.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

58.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

59.     The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Slack within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause Slack to engage in the acts described herein.

60.     The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

61.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    a)  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

    b)  Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

    c)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

    d)  Such other and further relief as the Court may deem just and proper.

1

## <u>JURY TRIAL DEMANDED</u>

2

      Plaintiff hereby demands a trial by jury.

3

4

DATED:  September 19, 2019       **GLANCY PRONGAY & MURRAY LLP**

5

                            By:   */s/ Charles H. Linehan*

Lionel Z. Glancy

6

Robert V. Prongay

Lesley F. Portnoy

7

Charles H. Linehan

Pavithra Rajesh

8

1925 Century Park East, Suite 2100

9

Los Angeles, California 90067

Telephone:  (310) 201-9150

10

Facsimile:  (310) 201-9160

Email:  info@glancylaw.com

11

12

**LAW OFFICES OF HOWARD G. SMITH**

Howard G. Smith

13

3070 Bristol Pike, Suite 112

Bensalem, PA 19020

14

Telephone: (215) 638-4847

Facsimile: (215) 638-4867

15

16

*Attorneys for Tyler Dennee*

17

18

19

20

21

22

23

24

25

26

27

28

## SWORN CERTIFICATION OF PLAINTIFF

Slack Technologies, Inc., **SECURITIES LITIGATION**

I, Tyler Dennee, certify:

1. I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2. I did not purchase Slack Technologies, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Slack Technologies, Inc., during the class period set forth in the Complaint are as follows:

   See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

   ____ Check here if you are a current employee or former employee of the defendant Company.

   I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _9/6/19_ _____ (Please Sign Your Name Above)

(REDACTED)

**Tyler Dennee's Transactions in Slack Technologies, Inc. (WORK)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 6/20/2019 | Bought | 49 | $40.4200 |