# Exhibit 9

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

https://www.wsj.com/articles/investor-advocates-see-risks-in-silicon-valleys-favorite-ipo-alternative-11578047400

IPOS

# Investor Advocates See Risks in Silicon Valley's Favorite IPO Alternative

Direct listings have been embraced by venture capitalists and big tech companies, but their safety for individual investors is a matter of debate



Slack caused a stir when it used a direct listing to go public on the New York Stock Exchange in June. **PHOTO:** MICHAEL NAGLE/BLOOMBERG NEWS

*By Alexander Osipovich*

Updated Jan. 3, 2020 6:32 pm ET

Direct listings have been embraced by Silicon Valley venture capitalists and big technology companies. But are they safe for Main Street investors?

That question is being raised by some investor advocates, who say the unorthodox process used by Slack Technologies Inc. and Spotify Technology SA to go public lacks the safeguards of conventional initial public offerings.

A direct listing is an alternative to a traditional IPO in which a company floats its shares on an exchange without hiring banks to underwrite the offering. That allows companies to save on fees and bypass some of the restrictions of standard IPOs, such as lockups that prevent insiders from immediately selling their shares.

The year ahead may bring more of the deals. Airbnb Inc. has weighed a direct listing, The Wall Street Journal has reported. The home-sharing company has said it expects to go public in 2020.

While direct listings have been happening quietly for years, they were limited to small deals until Spotify in 2018 became the first big company to go public via a direct listing. That spurred interest in the process from other unicorns, or private firms valued at more than $1 billion.

"A traditional IPO involves underwriters and other professionals with deep knowledge of the company—and clear legal obligations—helping to set the terms," said Tyler Gellasch, executive director of Healthy Markets Association, an investor group. "With a direct listing, the legal obligations of those setting the prices are not as clear. That's a new risk for investors."

Investors haven't fared well in the two major direct listings so far. Slack used the process to go public in June. Since then, the workplace-messaging company's shares have fallen 42%, while the S&P 500 has climbed 9.5%.

Meanwhile, shares of Spotify have gained 2.3% since its debut in April 2018, well below the 24% increase in the S&P 500 over the period. Both Slack and Spotify declined to comment.

The Securities and Exchange Commission is investigating Slack's direct listing and recent IPOs of tech unicorns at the New York Stock Exchange, in a probe looking at their first day of trading, the Journal reported on Dec. 20.

The SEC is also likely this year to rule on a proposal from NYSE to let companies use direct listings to raise capital, a plan that could make the process appeal to a broader array of firms eyeing the public markets.

Under current NYSE rules, companies can only use direct listings to sell existing shares, not to issue new shares and sell them to the public. That effectively limits the process to a small number of cash-rich companies that don't need to raise new funds but want to allow early investors and insiders to cash out.

In early December, the SEC rejected an initial version of NYSE's proposal, but the exchange resubmitted it with minor changes and the commission is reviewing the plan.

Newsletter Sign-up

The Big Board's proposal raised red flags with some groups, who said it would create a lightly regulated version of the IPO that could be exploited by poorly managed or fraudulent companies.

"This would be a complete end run around the traditional underwriting process, and it would create a massive loophole in the regulatory regime that governs the offerings of securities to the public," the American Securities Association wrote in a Dec. 12 letter to SEC Chairman Jay Clayton. ASA represents smaller financial-services firms, including some that underwrite IPOs.

The group noted that underwriters in a traditional IPO are liable for misrepresentations and omissions in the process, but with direct listings, the rules around liability are unclear. The SEC should ensure that financial advisers, exchanges and company insiders face liability for similar problems in direct listings, ASA wrote in its letter.



Slack Chief Executive Stewart Butterfield, right, and Chief Financial Officer Allen Shim at the company's trading debut at the New York Stock Exchange on June 20. PHOTO: MICHAEL NAGLE/BLOOMBERG NEWS

An NYSE spokesman said companies using direct listings face many of the same rules that apply in standard IPOs.

"Companies are required to follow established processes similar to an IPO, which include filing a registration statement with the SEC, meeting NYSE listing standards, and participating in a robust and transparent price discovery process," he said.

An SEC spokeswoman declined to comment on NYSE's proposal. Companies face "significant disclosure and procedural obligations" that apply to both IPOs and direct listings, she said, adding: "We expect issuers to adhere to those obligations."

One difference between IPOs and direct listings is how they are handled in court when aggrieved shareholders sue companies. That is the focus of a brewing legal battle over Slack. Investors are suing the company in California federal court, alleging it failed to fully disclose certain risks when it sold securities.

Such lawsuits are common and seen as a nuisance by many U.S. companies. But Slack's response has been novel, drawing on the fact it went public through a direct listing.

---

SHARE YOUR THOUGHTS

*Do you think direct listings are a good idea? Why would they be better than a standard IPO, or why not? Join the conversation below.*

---

The company says it shouldn't be held liable under Section 11 of the Securities Act of 1933, a provision that underpins many shareholder suits. That is because when Slack went public, investors bought a mix of shares, Slack said in a November court filing. Some were covered by the company's registration statement filed with the SEC and other shares hadn't been registered because they were sold by Slack insiders rather the company itself.

Because the investors suing Slack can't directly trace their shares to the registration statement, the suit should be dismissed, the company argued. Slack also said the plaintiffs can't seek damages because there was no offering price in its direct listing, which would determine how much money the plaintiffs had lost.

A win for Slack in the arcane dispute could help establish direct listings as a way for companies to duck lawsuits, said Francis McConville, a partner with Labaton Sucharow LLP who represents shareholders in lawsuits against companies but isn't involved in the Slack case.

"The danger, from an investor-protection and market-transparency standpoint, is that direct listings could be seen as a tool for companies to sidestep Securities Act liability," he said.

*—To receive our Markets newsletter every morning in your inbox, click here.*

**Write to** Alexander Osipovich at alexander.osipovich@dowjones.com

Case 3:19-cv-05857-SI    Document 65-9    Filed 02/06/20    Page 6 of 6

Copyright © 2020 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.