GIBSON, DUNN & CRUTCHER LLP
MICHAEL D. CELIO, SBN 197998
RAENA FERRER CALUBAQUIB, SBN 328794
1881 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MATTHEW S. KAHN, SBN 261679
MICHAEL J. KAHN, SBN 303289
555 Mission St. Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER DENNEE, | Case No. 3:19-cv-05857-SI |
| Plaintiff, | **DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| v. | |
| SLACK TECHNOLOGIES, INC., STEWART BUTTERFIELD, ALLEN SHIM, BRANDON ZELL, ANDREW BRACCIA, EDITH COOPER, SARAH FRIAR, JOHN O'FARRELL, CHAMATH PALIHAPITIYA, GRAHAM SMITH, ACCEL GROWTH FUND IV ASSOCIATES L.L.C., ACCEL GROWTH FUND INVESTORS 2016 L.L.C., ACCEL LEADERS FUND ASSOCIATES L.L.C., ACCEL LEADERS FUND INVESTORS 2016 L.L.C., ACCEL X ASSOCIATES L.L.C., ACCEL INVESTORS 2009 L.L.C., ACCEL XI ASSOCIATES L.L.C., ACCEL INVESTORS 2013 L.L.C., ACCEL GROWTH FUND III ASSOCIATES L.L.C., AH EQUITY PARTNERS I L.L.C., A16Z SEED-III LLC, SOCIAL+ CAPITAL PARTNERSHIP GP II, L.P., SOCIAL+CAPITAL PARTNERSHIP GP II LTD., SOCIAL+CAPITAL PARTNERSHIP GP III LP, SOCIAL+ CAPITAL PARTNERSHIP GP III, LTD., SOCIAL+CAPITAL PARTNERSHIP OPPORTUNITIES FUND GP L.P., AND SOCIAL+CAPITAL PARTNERSHIP OPPORTUNITIES FUND GP LTD., | **Hearing** Date: March 6, 2020 Time: 10:00 a.m. Place: Courtroom 1, 17th Floor Judge: Hon. Susan Illston<br><br>Action Filed: September 19, 2019 |
| Defendants. | |

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT ............................................................................................................ 2

      A.    Plaintiff Concedes He Does Not And Cannot Plead Standing..................................... 2

            1.    Plaintiff Admits He Lacks Section 11 Standing Under Ninth Circuit Law. ................................................................................................ 2

            2.    Plaintiff Also Fails To Plead Standing Under Section 12(a)(2)........................ 6

      B.    The Section 12(a)(2) Claim Also Fails Because Defendants Are Not Statutory Sellers. ................................................................................................... 7

      C.    Plaintiff Cannot Recover Damages Under Section 11.................................................. 8

      D.    Plaintiff Fails To Plead That Any Statement Was False Or Misleading....................... 9

      E.    The Section 15 Claim Must Be Dismissed. ................................................................. 13

III.  CONCLUSION ......................................................................................................... 14

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbey v. Computer Memories, Inc.*,
634 F. Supp. 870 (N.D. Cal. 1986) ...................................................................................1, 3, 4

*In re Am. Apparel, Inc. S'holder Litig.*,
2013 WL 10914316 (C.D. Cal. Aug. 8, 2013).........................................................................14

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) ...................................................................................7

*Barnes v. Osofsky*,
373 F.2d 269 (2d Cir. 1967)......................................................................................................3

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) ...........................................................................14

*Beaver Cty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*,
94 F. Supp. 3d 1035 (D. Minn. 2015) .....................................................................................10

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002)...........................................................................................9, 10, 12

*Casella v. Webb*,
883 F.2d 805 (9th Cir. 1989)....................................................................................................13

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013).............................................................................1, 2, 3, 4, 5, 7

*In re Century Aluminum Co. Sec. Litig.*,
749 F. Supp. 2d 964 (N.D. Cal. 2010) .....................................................................................6

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2009)..............................................................................................7

*In re Crazy Eddie Sec. Litig.*,
792 F. Supp. 197 (E.D.N.Y. 1992) ...........................................................................................3

*In re Extreme Networks, Inc. Sec. Litig.*,
2018 WL 1411129 (N.D. Cal. Mar. 21, 2018)..........................................................................12

*Flecker v. Hollywood Entm't Corp.*,
1997 WL 269488 (D. Or. Feb. 12, 1997)...................................................................................9

*Friedman v. Rayovac Corp.*,
295 F. Supp. 2d 957 (W.D. Wis. 2003) ...................................................................................10

ii

Gibson, Dunn &
Crutcher LLP

*FTC v. Cyberspace.com, LLC*,
    453 F.3d 1196 (9th Cir. 2006)..............................................................................................10

*In re Fusion-io, Inc. Sec. Litig.*,
    2015 WL 661869 (N.D. Cal. Feb. 12, 2015) .......................................................................10

*In re Gap Stores Sec. Litig.*,
    79 F.R.D. 283 (N.D. Cal. 1978).............................................................................................6

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008)..............................................................................................10

*Gray v. First Winthrop Corp.*,
    82 F.3d 877 (9th Cir. 1996)....................................................................................................9

*Greenberg v. Sunrun Inc.*,
    233 F. Supp. 3d 764 (N.D. Cal. 2017) .................................................................................10

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995)................................................................................................................6

*Hertzberg v. Dignity Partners, Inc.*,
    191 F.3d 1076 (9th Cir. 1999).................................................................................................5

*In re Iso Ray Sec. Litig.*,
    189 F. Supp. 3d 1057 (E.D. Wash. 2016) ..............................................................................9

*Jensen v. iShares Tr.*,
    --Cal. Rptr. 3d--, 2020 WL 373299 (Cal. Ct. App. Jan. 23, 2020) ..................................3, 4

*Jui-Yang Hong v. Extreme Networks, Inc.*,
    2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) .....................................................................12

*Krim v. pcOrder.com*,
    402 F.3d 489 (5th Cir. 2005)...................................................................................................3

*Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005)...................................................................................................9

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    2011 WL 4389689 (C.D. Cal. May 5, 2011) .........................................................................8

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010)..................................................................................................12

*Mulligan v. Impax Labs., Inc.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014) ...................................................................................13

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..................................................................................................11

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-05857-SI

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996)........................................................................................13

*Pinter v. Dahl*,
  486 U.S. 622 (1988).........................................................................................................7

*Plotkin v. IP Axcess Inc.*,
  407 F.3d 690 (5th Cir. 2005)........................................................................................11

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017)......................................................................................13

*In re Questcor Sec. Litig.*,
  2013 WL 5486762 (C.D. Cal. Oct. 1, 2013)................................................................10

*Rabkin v. Lion Biotechnologies, Inc.*,
  2018 WL 905862 (N.D. Cal. Feb. 15, 2018) .................................................................6

*Robb v. Fitbit Inc.*,
  216 F. Supp. 3d 1017 (N.D. Cal. 2016) .........................................................................9

*Robinson v. Audience, Inc.*,
  2013 WL 4736832 (Cal. Super. Ct. Sept. 3, 2013) ......................................................11

*Saslaw v. Askari*,
  1997 WL 221208 (S.D.N.Y. Apr. 25, 1997)..................................................................6

*In re Shoretel Inc., Sec. Litig.*,
  2009 WL 248326 (N.D. Cal. Feb. 2, 2009) ...................................................................8

*Sloman v. Presstek, Inc.*,
  2007 WL 2740047 (D.N.H. Sept. 18, 2007) ................................................................12

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996).................................................................................11, 12

*In re STEC Inc. Sec. Litig.*,
  2011 WL 2669217 (C.D. Cal. June 17, 2011) ..............................................................10

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F. Supp. 3d 1029 (N.D. Cal. 2016) .......................................................................14

*In re TUT Sys., Inc. Sec. Litig.*,
  2002 WL 35462358 (N.D. Cal. Aug. 15, 2002).............................................................9

*Warman v. Overland Data Inc.*,
  1998 WL 110018 (S.D. Cal. Feb. 20, 1998) ................................................................14

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-05857-SI

**Statutes**

15 U.S.C. § 77d................................................................................................................6

15 U.S.C. § 77k................................................................................................................8

15 U.S.C. § 77l................................................................................................................6

**Regulations**

17 C.F.R. § 230.144 ....................................................................................................5, 6

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-05857-SI

## I.     INTRODUCTION

Lead Plaintiff Fiyyaz Pirani admits that he cannot trace his shares back to Slack's Registration Statement.  He also acknowledges that the Ninth Circuit requires a plaintiff to plead tracing to state a Section 11 claim.  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013).  Under a straightforward application of Ninth Circuit law, this action must be dismissed.

Pirani attempts to escape this outcome with a policy-based argument—scare tactics, really—arguing that if Defendants' argument is accepted, "then Section 11 is effectively eliminated as to any sales of Slack common shares" (Opp. at 8) and would "allow companies to eliminate Section 11 liability by releasing non-registered shares into the market at the same time as registered shares" (Opp. at 2).  Plaintiff's argument is both overstated and directed to the wrong forum.  First, Pirani has other ways to remedy his alleged harm even if Sections 11 and 12(a)(2) are unavailable.  For example, he could always bring a securities fraud claim under the catchall provisions of Section 10(b) of the Securities Exchange Act of 1934.  He just cannot "tak[e] advantage of section 11's relaxed liability requirements" because "Section 11 simply was not intended to provide a remedy to every person who might have been harmed by a defective registration statement."  *Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 875 (N.D. Cal. 1986).  In fact, enforcing "the narrow scope of potential liability envisioned by section 11"—with its "conclusive presumption of reliance" and the strict liability it imposes on companies (*id.*)—makes perfect sense in this case given that, as Plaintiff admits, Slack "d[id] not issue new shares or sell shares" and "d[id] not raise any funds" in connection with its direct listing. Opp. at 3-4.  Granting Slack's motion to dismiss because this *particular* direct listing bars this particular Plaintiff's claims would not create the financial markets crisis decried in Plaintiff's brief.

But even if Pirani's policy arguments carried any weight, this Court is not the forum to address those concerns.  If the SEC or Congress is concerned that direct listings may allow "companies to evade liability under Section 11"—even though it is a more than reasonable policy choice not to subject companies that do not earn any money upon going public to potential strict liability under Section 11—then they may always fix this purported "loophole." *Id.* at 1, 10.  For example, the SEC could, by way of a rulemaking, require unregistered shares to be subject to a "lock

Gibson, Dunn & Crutcher LLP

up" period when a company goes public with a direct listing. Congress could, of course, do the same thing by statute. That way, like a typical IPO with contractual lockups, only registered shares would enter the market. *See id.* at 10. In that scenario—unlike the case here—shareholders would be able to trace their shares to a company's registration statement. *Id.* Regardless, this Court simply is not the proper venue to address these matters of policy. Controlling Ninth Circuit law permits only one outcome in this case: dismissal for lack of standing. And because Plaintiff concedes that he is unable to allege that he purchased registered shares as opposed to unregistered shares, there is no way for him to cure this pleading deficiency. Accordingly, the Court should dismiss the Amended Complaint with prejudice.

## II.    ARGUMENT

### A.    Plaintiff Concedes He Does Not And Cannot Plead Standing.

#### 1.    Plaintiff Admits He Lacks Section 11 Standing Under Ninth Circuit Law.

Plaintiff's opposition confirms that he does not have standing under Section 11 because he cannot trace his shares back to Slack's Registration Statement, as required by Ninth Circuit law. *Century Aluminum*, 729 F.3d at 1106. Plaintiff concedes that both shares that were registered under the Registration Statement (which may confer standing) *and* shares that were *not registered under the Registration Statement* (which may not confer standing) were available for sale in Slack's direct listing. Opp. at 2. He further concedes that he does not know which type of shares he owns. *Id.* at 2, 9-10; *see also* Mot. at 8-9 (discussing anonymizing effect of brokerage transactions like those on the NYSE). In these circumstances, Plaintiff's Section 11 claim must be dismissed because he does not and cannot plead that he purchased shares "issued *under* the allegedly false or misleading registration statement." *Century Aluminum*, 729 F.3d at 1106 (emphasis added); *see also* Mot. at 7-9.

Unable to contest that he cannot trace his shares, Plaintiff argues that the Court should ignore this Ninth Circuit requirement because "[i]n today's modern market, tracing is all but impossible" (Opp. at 9 n.6), and if this requirement is imposed "then Section 11 is effectively eliminated as to any sales of Slack common shares." Opp. at 8. Respectfully, Plaintiff is making this argument to the wrong court. *Century Aluminum*'s holding is binding on this Court, and Plaintiff's policy arguments cannot change that this controlling precedent requires dismissal.

2

Moreover, Plaintiff's attempt to distinguish *Century Aluminum* fails because the Ninth Circuit and many other courts have rejected the very policy argument on which his argument is based. Although the Ninth Circuit recognized that tracing is essentially "impossible" when the market contains shares beyond those issued under the challenged registration statement, it held that "this tracing requirement is the condition Congress has imposed for granting access to the 'relaxed liability requirements' § 11 affords." *Century Aluminum*, 729 F.3d at 1107 (quoting *Abbey*, 634 F. Supp. at 875). Similarly, in *Krim v. pcOrder.com* (on which *Century Aluminum* relies), the court rejected appellants' invitation to relax the tracing requirement on the basis that it was "virtually impossible to differentiate" between actionable and non-actionable shares, reasoning that whether "market realities . . . may render Section 11 ineffective as a practical matter in some aftermarket scenarios is an issue properly addressed by Congress," not by courts. 402 F.3d 489, 497-98 (5th Cir. 2005). Numerous courts have reached the same conclusion. *See, e.g.*, *Jensen v. iShares Tr.*, --Cal. Rptr. 3d--, 2020 WL 373299, at *11 (Cal. Ct. App. Jan. 23, 2020) (rejecting argument that it is impossible to trace, and noting "[i]f . . . securities markets and financial products have changed so as to undermine the protections and remedies afforded by existing securities laws, the matter requires the attention of Congress."); *In re Crazy Eddie Sec. Litig.*, 792 F. Supp. 197, 202 (E.D.N.Y. 1992) (rejecting argument that it is "virtually impossible" to trace, holding it was bound by Second Circuit precedent, and noting "[i]f Congress wishes to ease the burden on security holders such as plaintiffs, it can do so."); *Barnes v. Osofsky*, 373 F.2d 269, 273 (2d Cir. 1967) (holding plaintiffs must trace based on text of Section 11, and noting only Congress can change the statute). Plaintiff's argument has been repeatedly rejected, and it should be rejected again here.[1]

The Court also should reject Plaintiff's argument that the Court should make an exception to the tracing requirement in this case because shareholders otherwise have no remedy under Section 11.

---

[1] To the extent Plaintiff is arguing that tracing is always impossible, that argument is belied by their own authority—not to mention Ninth Circuit law and the countless Section 11 actions that attack traditional IPOs. *See* Opp. at 10 ("In the case of a traditional IPO, tracing is easily established by anyone who purchased stock before non-IPO shares enter the market.") (quoting Fortunato Decl. Ex. 7); *Century Aluminum*, 729 F.3d at 1106 ("When all of a company's shares have been issued in a single offering under the same registration statement, this 'tracing' requirement generally poses no obstacle.").

DEFENDANTS' REPLY ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-05857-SI

Gibson, Dunn & Crutcher LLP

Opp. at 8.  As the court held in *Abbey* (which also was relied on by *Century Aluminum*), "Section 11 simply was not intended to provide a remedy to every person who might have been harmed by a defective registration statement," but only "to those individuals who actually purchased shares *issued pursuant to a defective registration statement*."  634 F. Supp. at 875-76 (emphasis added).  As *Abbey* makes clear, the structural limits on liability under Section 11 do not mean Plaintiff's inability to trace his shares leaves him without a remedy.  *See id.* at 875.  For example, Plaintiff "may still pursue his lawsuit under . . . [SEC Rule] 10b-5" for securities fraud; he just cannot "tak[e] advantage of section 11's relaxed liability requirements."  *Id.*; *see also Jensen*, 2020 WL 373299, at *11 (same).[2]

Plaintiff's attempt to distinguish this case from the overwhelming authority holding that stockholders like Plaintiff do not have standing is unconvincing.  Plaintiff argues that the case law cited by Defendants (Mot. at 7-9) is inapplicable because those cases involved multiple offerings or otherwise did not "involve[] a direct public offering like Slack's."  Opp. at 9-10.  It should go without saying (although apparently it does not) that none of Defendants' cases involved direct listings because Slack's direct listing was only the second significant direct listing ever to take place.  That does not, however, render the many cases to consider the tracing issue inapplicable.  The point made in all of the cases cited by Defendants—including those where, like here, the market contained a mixture of registered and unregistered shares (Mot. at 9)—is the same point Defendants make in this case:  stockholders cannot trace their shares when the market contains shares other than those registered under the challenged registration statement.  *Id.* at 7-9.  So while Plaintiff is right that *Century Aluminum* involved "successive stock offerings" (Opp. at 8-9), that only mattered because it meant that "plaintiffs' shares could have come from the secondary offering" being challenged *or* "the pool of previously issued shares"—*i.e.*, plaintiffs' generic tracing allegations merely were "consistent with their shares having come from *either source*," which is insufficient to plead standing.  *See* 729 F.3d at 1108 (emphasis added).  This is the same problem Plaintiff faces here:  his shares originally could have been registered under Slack's Registration Statement, or they could be shares that were

---

[2]  The legislative history cited by Plaintiff actually supports Defendants' argument as it confirms what Section 11 clearly states:  Section 11 only applies to holders of registered shares.  Opp. at 8 (noting "no one is obliged to register a security" but that if one does "avail himself of the privilege of registration . . . [then there is] a remedy to all purchasers") (quoting Fortunato Decl. Ex. 5).

Gibson, Dunn & Crutcher LLP

exempt from registration.  He simply does not and cannot know the source of his shares, which, under *Century Aluminum*, means he cannot plead standing.  Plaintiff offers no legal reason why his inability to trace because he purchased shares following a direct listing is any different than an inability to trace in a case involving multiple offerings, because there is none.

Instead, Plaintiff points to inaccurate and legally irrelevant distinctions about Slack's direct listing, none of which make this case anything more than a straightforward application of *Century Aluminum*.  *First*, Plaintiff argues that "Slack's shares would not have traded publicly had Slack not filed the Offering Materials."  Opp. at 8.  This is false.  At the time of the direct listing, 164,932,646 shares were held by stockholders that could sell their shares to the public without any registration statement pursuant to SEC Rule 144.  Kahn Decl. Ex. A at 164; *see* 17 C.F.R. § 230.144(b)(1)(ii).  While the direct listing made it easier for these stockholders to sell their shares because Slack was listed on the NYSE by virtue of going public, the stockholders had the ability to sell shares even before the direct listing occurred.  *Second*, Plaintiff argues that he "relied on the only Offering Materials on file."  Opp. at 9.  Putting aside that reliance is not an element of Plaintiff's claim, this allegation is irrelevant because, even if true, it does not show that Plaintiff purchased securities "issued under the allegedly false or misleading registration statement."  *Century Aluminum*, 729 F.3d at 1106; *see also Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080 (9th Cir. 1999) (Section 11's reference to purchasing "such security" refers to securities issued under the challenged registration statement).  *Finally*, Plaintiff argues that he "did not ask for 'registered shares' or 'non-registered' shares."  Opp. at 9.  But the same could be said for the *Century Aluminum* plaintiffs who neither asked for "secondary offering" or "initial offering" shares, and instead received shares from "brokers who neither know nor care whether they are getting newly registered or old shares."  *See Century Aluminum*, 729 F.3d at 1107 (citation omitted).

There is simply no basis in fact or law to disregard the Ninth Circuit's mandate that plaintiffs suing under Section 11 must be able to trace their shares.  Because Plaintiff admits he cannot do that, this case must be dismissed.

Gibson, Dunn &
Crutcher LLP

**2.      Plaintiff Also Fails To Plead Standing Under Section 12(a)(2).**

Because Plaintiff fails to plead standing under Section 11, he necessarily fails to plead standing under Section 12(a)(2). *See* Mot. at 10 (citing *Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *21 (N.D. Cal. Feb. 15, 2018)).  There is no dispute that (1) Plaintiff must plead that the shares he owns were sold "by means of a prospectus" (15 U.S.C. § 77l(a)(2)), (2) Slack's Prospectus *only* covered registered shares, and (3) Plaintiff has no idea whether he holds registered or unregistered shares.  Mot. at 10.  Thus, as demonstrated in the Motion, Plaintiff has not and cannot plead standing under the plain terms of Section 12(a)(2).

Plaintiff has no response to this argument.  Instead, he half-heartedly suggests that Section 12(a)(2) applies to unregistered shares based on dictum from the 1978 opinion in *In re Gap Stores Securities Litigation*.  Opp. at 11 (quoting 79 F.R.D. 283, 306 (N.D. Cal. 1978)).  But *Gap* was decided before the Supreme Court made clear that Section 12(a)(2) only applies to securities that are required to be registered and where a prospectus must be delivered.  *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569, 571 (1995); *see Saslaw v. Askari*, 1997 WL 221208, at *6 (S.D.N.Y. Apr. 25, 1997) ("*Gustafson* holds that § 12(2) liability is coextensive with the registration and disclosure obligations of the 1933 Act.").  Therefore, the approximately 165 million unregistered shares available for sale in Slack's direct listing are not covered by Section 12(a)(2) because they are *exempt* from the registration and prospectus delivery requirements of the Securities Act.  *See* 17 C.F.R. § 230.144, preliminary note (SEC Rule 144, if followed, brings shareholders within the exemption for "transactions by any person other than an issuer, underwriter, or dealer" under Section 4(1) of the Securities Act); 15 U.S.C. § 77d(a)(1) (Section 4(1) of the Securities Act).  Under the plain text of the statute and *Gustafson*, Plaintiff cannot assert his Section 12(a)(2) claim in connection with unregistered shares.  And because Plaintiff cannot plead whether the shares he holds are registered or unregistered, he cannot plead standing.  This claim must be dismissed with prejudice.

Even if Plaintiff hypothetically could plead standing (which he cannot), there still is no dispute that the Amended Complaint's standing allegations are insufficient.  Defendants demonstrated in their Motion that courts in this Circuit—including this Court—hold that Plaintiff's allegation that he "purchased or otherwise acquired Slack common stock pursuant and/or traceable to

6

Gibson, Dunn &
Crutcher LLP

the Offering Materials" (AC ¶ 17) does not plead standing. Motion at 11; *see In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 977 (N.D. Cal. 2010) (Illston, J.) (plaintiffs' "conclusory allegations" that they "purchase[d] 'pursuant and/or traceable to' the January 2009 offering . . . are insufficient to establish standing under Section 12(a)(2)"). Plaintiff has no response to this argument, and thus concedes that his deficient standing allegations require dismissal.

**B.      The Section 12(a)(2) Claim Also Fails Because Defendants Are Not Statutory Sellers.**

While Plaintiff's claim must be dismissed on standing grounds, it also should be dismissed because Defendants are not within the class of defendants who may be sued under Section 12(a)(2). There is no dispute that Plaintiff only has a claim against a party that "passes title of the security to the purchaser, or solicits the sale of the security." *Compare* Mot. at 12 (quoting *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1073 (N.D. Cal. 2010)), *with* Opp. at 11. Plaintiff concedes that he does not and cannot plead that any Defendant passed title to him because he purchased from "brokers who neither know nor care" about the source of their shares. *See Century Aluminum*, 729 F.3d at 1107 (citation omitted). He thus seeks to proceed only on a solicitation theory. Opp. at 11-12.

Plaintiff does not plead that any Defendant actively solicited his purchase of Slack shares. As detailed in Defendants' Motion, courts routinely reject the same solicitation allegations that Plaintiff makes here. Mot. at 12-14. Plaintiff only cites a single case, *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009), in which a court found that allegations similar to Plaintiff's were sufficient. Opp. at 12. This lone case is out of step with the weight of authority in this Circuit. *See* Mot. at 12-14 (citing six cases rejecting allegations like Plaintiff's). And for good reason. In *Pinter v. Dahl*, the Supreme Court held that a defendant cannot be held liable as a solicitor based on "mere participation" in the sales transaction. 486 U.S. 622, 650 (1988). This is because "§ 12 focuses on the defendant's *relationship* with the plaintiff-purchaser," *not* "on the defendant's degree of involvement in the securities transaction and its surrounding circumstances." *Id.* at 651 (emphasis added). Plaintiff's allegations—and those at issue in *Charles Schwab*—impermissibly focus on Defendants' alleged "participation" and "involvement" in sales to investors *generally*, but completely fail to plead the "direct relationship *between the purchaser and the defendant*" required

Gibson, Dunn & Crutcher LLP

by Section 12 and Supreme Court law. *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *9 (C.D. Cal. May 5, 2011) (emphasis added). This, too, requires dismissal.

## C. Plaintiff Cannot Recover Damages Under Section 11.

Defendants also demonstrated in their Motion that the nature of Slack's direct listing bars Plaintiff from recovering any damages under Section 11. Mot. at 14. To recover Section 11 damages, there must be a price at which a security was "offered to the public." *See* 15 U.S.C. § 77k(e); *id.* § 77k(g). However, Slack's direct listing was not a public offering, and there was a "lack of an initial public offering price." Kahn Decl. Ex. A at 172; *see id.*, cover page (noting that the "proposed maximum offering price per share" was "not applicable"). There is thus no way to calculate damages under Section 11. Accordingly, the claim should be dismissed.

Plaintiff offers two unavailing responses. First, Plaintiff argues that because "'[d]amages are not an element' of a Section 11 claim," Defendants' argument is inappropriate at the motion to dismiss stage. Opp. at 13. Not so. The affirmative defense that a Section 11 plaintiff cannot establish damages may serve as the basis for a motion to dismiss where, as here, "the facts as alleged by plaintiffs . . . establish the affirmative defense as a matter of law." *See In re Shoretel Inc., Sec. Litig.*, 2009 WL 248326, at *5 (N.D. Cal. Feb. 2, 2009) (granting motion to dismiss). Here, the alleged and judicially noticeable facts unequivocally establish the defense as a matter of law.

Second, Plaintiff argues that there *was* an "offering price," which he alleges is the $38.50 price at which Slack shares started to trade on the NYSE. Opp. at 13; *see* AC ¶¶ 10, 75. Plaintiff cites no basis for this surprising claim. As Defendants explained (Mot. at 14), this $38.50 price was set by a designated market maker after analyzing "buy and sell orders collected by the NYSE from broker-dealers." Kahn Decl. Ex. A at 47. Thus, the *market alone* was responsible for this price, not Slack or anybody else who set what they thought was an appropriate "offering price." *Id.* at 47-48, 171. It makes no sense to put Slack on the hook for damages based on a price that it had no involvement in establishing—let alone at a price that some of the very investors who are now suing Defendants helped push $12.50 per share higher than the $26 NYSE reference price (Mot. at 14) based on their own buy orders.

Indeed, Plaintiff's opposition shows the illogic of his position.  Under Plaintiff's theory, there is no single offering price, but rather the offering price "cap on damages" is a moving target that changes based on the trading price set by the market.  Opp. at 13 (because certain Defendants "sold shares at more than $40 per share on the opening day," that "push[ed] the cap on damages higher than the $38.50 opening price.").  Plaintiff simply cannot get around the fact that Section 11 requires a single offering price to calculate damages, and that, here, there is no such price.  His position would write the statutory damages cap out of Section 11.

**D.      Plaintiff Fails To Plead That Any Statement Was False Or Misleading.**

*Outages And Slack's SLA.*  Slack very clearly disclosed that it has suffered outages "in the past" and that it could suffer outages in the future.  Mot. at 16 (citing AC ¶ 95).  There is nothing misleading about this disclosure.  Unlike the cases cited by Plaintiff (Opp. at 14),[3] Slack did not suggest that the risk of outages was merely hypothetical because it repeatedly stated that it had *already experienced* outages.  Nor is this disclosure misleading by omitting that "Slack failed to meet its 99.99% uptime guarantee for seven of the twelve months" in 2018 (Opp. at 14), because a disclosure is not misleading merely because "it is incomplete or does not include all relevant facts." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *see also* Mot. at 18.[4]

Slack also disclosed that it had paid credits to certain customers under its SLA in the past and might have to pay in the future depending on the severity of any future outage.  Mot. at 16-17 (citing AC ¶ 95).  Plaintiff argues that this disclosure was misleading because Slack failed to disclose the terms of its SLA.  Opp. at 15.  But Plaintiff does not identify *any* statement that Slack made about the

---

[3] *See In re TUT Sys., Inc. Sec. Litig.*, 2002 WL 35462358, at *9 (N.D. Cal. Aug. 15, 2002) (disclosure of mere "risk" of harm from product defects was misleading because the company allegedly had *already* started recalling products); *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017, 1034-35 (N.D. Cal. 2016) (company was *presently* experiencing the warned-of risk).

[4] Plaintiff's argument that Slack should have "offset" allegedly misleading statements by disclosing the "truth" (Opp. at 16) is based on irrelevant cases that either are about (1) the "truth-on-the-market" defense in securities fraud cases, or (2) the bespeaks caution doctrine, which deals with forward-looking statements, neither of which applies here.  *See In re Iso Ray Sec. Litig.*, 189 F. Supp. 3d 1057, 1073 (E.D. Wash. 2016) (truth-on-the-market); *Flecker v. Hollywood Entm't Corp.*, 1997 WL 269488, at *9 (D. Or. Feb. 12, 1997) (truth-on-the-market and bespeaks caution doctrine); *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005) (bespeaks caution doctrine); *Gray v. First Winthrop Corp.*, 82 F.3d 877, 884 (9th Cir. 1996) (same).

terms of Slack's SLA, so there is no statement that could be rendered misleading by omission of these details. *See, e.g.*, *Greenberg v. Sunrun Inc.*, 233 F. Supp. 3d 764, 772 (N.D. Cal. 2017) (an omission is only actionable if it makes a statement misleading; "it is not enough that the Prospectus omitted relevant facts, or even material facts"). And, again, Slack had no freestanding duty to disclose such details because the securities laws do not impose a duty to be "complete." *Brody*, 280 F.3d at 1006 & n.8.[5]

Plaintiff simply does not plead that Slack "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exist[ed]." *Id.* at 1006. There are no non-conclusory allegations in the Amended Complaint that Slack was suffering material outages that required material payments under the SLA when Slack made the disclosures in May and June 2019. Instead, Plaintiff only points to facts that existed the year *before* Slack filed the Registration Statement (the 2018 uptime statistics) or that did not exist until *after* the fact (the June 28 and July 29, 2019 outages), neither of which can support a finding of falsity. Mot. at 18 & n.8. In response to the first point, Plaintiff attempts to distinguish *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869 at *19 (N.D. Cal. Feb. 12, 2015)—which held that an alleged fact that was three months old was too stale to establish the falsity of a later statement—on the grounds that it was "subject to [] heightened pleading standards," but the pleading standard applicable to fraud has nothing to do with *Fusion*'s point that a statement must be *false when made*. Opp. at 17. And Plaintiff's argument that "the post-Offering outages can and do support falsity" (*id.* at 17 n.12) is based on cases where the later-emerging facts demonstrated that defendants already *knew* their statements were misleading *at the*

---

[5] The cases Plaintiff cites for the point that true statements can be misleading are inapposite. Opp. at 15-16; *see Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 991 (W.D. Wis. 2003) ("channel stuffing" that "artificially inflated" company's "sales and income growth" made statements misleading); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1052 (9th Cir. 2008) (statements that demand for drug was strong were misleading by omitting "it was unlawful off-label marketing that was driving prescription volume"); *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) (not a securities case); *In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, at *7 (C.D. Cal. June 17, 2011) (announcement of new contract was a "misleading half-truth" because defendants knew it was a "one-off type of deal"); *Beaver Cty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*, 94 F. Supp. 3d 1035, 1051 (D. Minn. 2015) (statements about high margins attributable to strong "producer relationships" misleading because a significant producer was defendant's brother-in-law); *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *11, *14 (C.D. Cal. Oct. 1, 2013) (statements about sales of drug were misleading because omitted that drug tests were flawed and doctors paid off).

Gibson, Dunn &
Crutcher LLP

*time the registration statement became effective.*[6] This is not the case here, where Plaintiff admits that outages of this size were "unusual" and were caused by issues that Slack "didn't realize" were a problem. Mot. at 19 (citing AC ¶¶ 109, 111).[7]

*Scaling.* Plaintiff's attack on Slack's disclosure that it has a "scalable architecture" is based on the same deficient outages theory (Opp. at 19) and thus fails for the same reason. Mot. at 19-20. Moreover, Plaintiff admits that Slack's user base was growing throughout 2019 (*id.* at 18-19), and yet does not point to any outages at all in 2019 prior to the direct listing on June 20. Opp. at 19 (noting "outages throughout 2018, on June 28, 2019, and again on July 29, 2019"). Plaintiff's own allegations therefore fatally undermine his argument that Slack could not scale.

*Competition from Microsoft.* Slack was transparent that its "primary competitor is currently Microsoft" (Kahn Decl. Ex. A at 16), and that its larger competitors (including Microsoft) "have . . . substantial competitive advantages" and "have . . . [taken actions] in a manner that discourages users from purchasing Slack." *Id.* at 17 (detailing competitors' advantages and actions that adversely affected Slack). In the face of these disclosures, Plaintiff's argument that Slack was "vague" and "downplayed the impact" of competition rings hollow. Opp. at 20.

Plaintiff's argument that Slack should have disclosed that Microsoft was the market leader based on data that was announced *by Microsoft after the direct listing* is even more farfetched. Opp. at 20; *see* Mot. at 20. In fact, the Ninth Circuit rejected a nearly identical claim *also* challenging a risk disclosure about competition that *also* involved Microsoft. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1407 (9th Cir. 1996). There, although Stac made "detailed disclosures concerning the risk of competition"—just like here—plaintiff alleged that the disclosure was misleading because Stac knew that Microsoft was planning to roll out a competing product. *See id.* at 1406. The Ninth Circuit rejected plaintiff's theory that "Stac was obliged not only to report on its own product line and

---

[6] *See Robinson v. Audience, Inc.*, 2013 WL 4736832, at *4 (Cal. Super. Ct. Sept. 3, 2013) (omitted information allegedly was knowable to defendant at the time of disclosure because unfavorable events had already occurred); *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 698 (5th Cir. 2005) (bankruptcy announcement followed "closely on the heels of" statements of strong performance); *Novak v. Kasaks*, 216 F.3d 300, 313 (2d Cir. 2000) (defendants allegedly knew serious inventory problems already existed at the time statements of strong performance were made).

[7] For the same reasons, Plaintiff does not plead a violation of Items 303 or 105. Mot. at 19.

11

Gibson, Dunn &
Crutcher LLP

marketing plans, but to report on and make predictions regarding *Microsoft's* intentions." *Id.* at 1406-07. The same is even more true here. Unlike Stac, which had *some* knowledge about Microsoft's plans (*id.*), there is no allegation that Slack had any reason to know that Microsoft's user base allegedly was going to eclipse Slack's. Slack had no ability, let alone an obligation, to disclose this information.[8]

***Key Benefits.*** Plaintiff does not and cannot dispute that statements about how Slack's platform works and why users could benefit from using Slack have nothing to do with outages or competition from Microsoft. *Compare* Mot. at 21, *with* Opp. at 21. Instead, Plaintiff argues that any statement that is at all positive about Slack is rendered misleading by omitting *any* negative information, no matter how tenuous the connection. *Id.* That is not the law. Because Slack's truthful statements about its features did not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists," this disclosure is not misleading. *Brody,* 280 F.3d at 1006.

***Go-To-Market Strategy.*** Slack's statements about its strategy are not misleading for the same reason. Mot. at 21. There is nothing misleading about omitting information about outages and the terms of the SLA from a discussion that is not about those topics. *See, e.g., Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017) (plaintiff failed to plead falsity where "the reasons Plaintiffs offer as to why the statements are false or misleading bear no connection to the substance of the statements themselves"). Nor did Slack mislead anybody by allegedly omitting that "revenue growth was decreasing while marketing expenses were increasing and growth was slowing" (Opp. at 22) because Slack *disclosed all of this information.* Mot. at 22-23; *see In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 365-66 (2d Cir. 2010) ("When analyzing offering materials for compliance with the securities laws, we review the documents holistically and in their entirety."). And while Plaintiff argues Slack "paint[ed] an unrealistic picture" about how it would be able to "achieve growth" (Opp. at 22)—which plainly attacks forward-looking

---

[8] Plaintiff's cases (Opp. at 20-21) are distinguishable because they involved the *defendants'* information, not a third party's information. *See Sloman v. Presstek, Inc.*, 2007 WL 2740047, at *2, *6 (D.N.H. Sept. 18, 2007); *In re Extreme Networks, Inc. Sec. Litig.*, 2018 WL 1411129, at *18-20 (N.D. Cal. Mar. 21, 2018).

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-05857-SI

statements—Slack's disclosures are immunized under the bespeaks caution doctrine because its detailed risk disclosures, including on the very outages and competition issues that Plaintiff challenges in this case, were more than sufficient to warn potential investors why Slack might not be able to execute on its strategy.  Mot. at 22.[9]

At base, Plaintiff's theory of the case is contradicted by his admissions that Slack's business has continued to grow both before and after the direct listing.  Mot. at 18-19 (citing AC ¶¶ 79, 90, 111).  Two "unusual" outages (and corresponding payouts) that occurred *after* Slack filed its disclosure documents do not and cannot render what Slack said in these documents misleading.  While the structural standing and other problems discussed above require dismissal, this case should be dismissed on the substance as well.

**E.    The Section 15 Claim Must Be Dismissed.**

Because Plaintiff does not plead a primary a violation of the Securities Act, his Section 15 control claim must be dismissed.  Mot. at 23.

Plaintiff also fails to plead that the VC Defendants controlled Slack.  Defendants established in their Motion that courts routinely reject Plaintiff's claim that merely having minority "stock ownership, and a seat on the board" is sufficient to plead control.  *Compare* Mot. at 24, *with* Opp. at 25.  But that is all that Plaintiff alleges here:  that each of the three venture capital firms held a minority stake in Slack, and that each appointed a single director to Slack's seven-member Board.  Mot. at 24.  None of these allegations (or any of Plaintiff's other irrelevant and/or conclusory allegations of control) plead that any of the VC Defendants exercised power over the "management and policies of the corporation" as required.  *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d

---

[9]  Additionally, statements that Plaintiff challenges such as "customers love" Slack and Slack's product is "exceptional" are classic "puffing" statements (Mot. at 21-22), and not at all like the statements challenged in Plaintiff's distinguishable cases.  Opp. at 22; *see Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 968 (N.D. Cal. 2014) (statements that responses to FDA warnings were "well under way" were not puffery because defendants allegedly did not take remedial actions); *Casella v. Webb*, 883 F.2d 805, 806, 808 (9th Cir. 1989) (statement that "IRS approved tax shelter" investment was a "sure thing" was not puffery because the investment was risky and not IRS-approved); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017) (statements were "concrete descriptions" not "subjective or emotive" puffery).

13

Gibson, Dunn & Crutcher LLP

1151, 1162 (9th Cir. 1996). Moreover, Plaintiff concedes that he cannot plead control by inexplicably lumping the VC Defendants together. *Compare* Mot. at 24, *with* Opp. at 25 n.20.

None of Plaintiff's cases support his theory of control. Opp. at 25. In fact, many support Defendants' arguments. Plaintiff's primary case, *American Apparel*, confirms "[t]he fact that a company has representatives on another company's board, and that it holds a minority stock interest are [] insufficient to establish control person liability." *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at \*32 (C.D. Cal. Aug. 8, 2013). That case only found that plaintiffs pleaded control because an 18% stockholder *also* was a major creditor (holding $80 million in debt), had *two* board seats, had the right to appoint an *additional* "board observer," *and* American Apparel's CEO expressly stated that the stockholder "was going to be involved in 'management decisions as far as strategic issues.'" *Id.* at \*34, \*37. Nothing like that is pleaded here nor could be. Plaintiff's remaining cases are even less persuasive. *See Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at \*25 (C.D. Cal. July 1, 2008) (venture capital defendants had a *majority* stake in the company); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1049 (N.D. Cal. 2016) (venture capital defendant was the *majority* shareholder); *Warman v. Overland Data Inc.*, 1998 WL 110018, at \*6 (S.D. Cal. Feb. 20, 1998) (defendants did not even "present[] an argument as to their status as control persons").[10]

### III.    CONCLUSION

For the foregoing reasons, and the reasons stated in the opening brief, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

DATED:  February 21, 2020

                                        GIBSON, DUNN & CRUTCHER LLP

                                        By: /s/ Michael D. Celio
                                        MICHAEL D. CELIO, SBN 197998
                                        RAENA FERRER CALUBAQUIB, SBN 328794
                                        1881 Page Mill Road

---

[10]  Plaintiff's argument about directors signing documents (Opp. at 24) is irrelevant because the VC Defendants are not alleged to have signed the disclosure documents in this case.

14

Gibson, Dunn & Crutcher LLP

Palo Alto, California 94304
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MATTHEW S. KAHN, SBN 261679
MICHAEL J. KAHN, SBN 303289
555 Mission St. Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendants Slack Technologies, Inc., Stewart Butterfield, Allen Shim, Brandon Zell, Andrew Braccia, Edith Cooper, Sarah Friar, John O'Farrell, Chamath Palihapitiya, Graham Smith, Accel Growth Fund IV Associates L.L.C., Accel Growth Fund Investors 2016 L.L.C., Accel Leaders Fund Associates L.L.C., Accel Leaders Fund Investors 2016 L.L.C., Accel X Associates L.L.C., Accel Investors 2009 L.L.C., Accel XI Associates L.L.C., Accel Investors 2013 L.L.C., Accel Growth Fund III Associates L.L.C., AH Equity Partners I L.L.C., A16Z Seed-III LLC, Social+Capital Partnership GP II L.P., Social+Capital Partnership GP II Ltd., Social+Capital Partnership GP III L.P., Social+Capital Partnership GP III Ltd., Social+Capital Partnership Opportunities Fund GP L.P., and Social+Capital Partnership Opportunities Fund GP Ltd.*

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY ISO MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-05857-SI