1  GIBSON, DUNN & CRUTCHER LLP
   MICHAEL D. CELIO, SBN 197998
2  RAENA FERRER CALUBAQUIB, SBN 328794
   1881 Page Mill Road
3  Palo Alto, California 94304
   Telephone: (650) 849-5300
4  Facsimile: (650) 849-5333

5  MATTHEW S. KAHN, SBN 261679
   MICHAEL J. KAHN, SBN 303289
6  555 Mission St. Suite 3000
   San Francisco, California 94105
7  Telephone: (415) 393-8200
   Facsimile: (415) 393-8306
8
   *Attorneys for Defendants*
9
                    UNITED STATES DISTRICT COURT
10
                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12 | TYLER DENNEE, | Case No. 3:19-cv-05857-SI |
|---|---|
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| SLACK TECHNOLOGIES, INC., STEWART BUTTERFIELD, ALLEN SHIM, BRANDON ZELL, ANDREW BRACCIA, EDITH COOPER, SARAH FRIAR, JOHN O'FARRELL, CHAMATH PALIHAPITIYA, GRAHAM SMITH, ACCEL GROWTH FUND IV ASSOCIATES L.L.C., ACCEL GROWTH FUND INVESTORS 2016 L.L.C., ACCEL LEADERS FUND ASSOCIATES L.L.C., ACCEL LEADERS FUND INVESTORS 2016 L.L.C., ACCEL X ASSOCIATES L.L.C., ACCEL INVESTORS 2009 L.L.C., ACCEL XI ASSOCIATES L.L.C., ACCEL INVESTORS 2013 L.L.C., ACCEL GROWTH FUND III ASSOCIATES L.L.C., AH EQUITY PARTNERS I L.L.C., A16Z SEED-III LLC, SOCIAL+ CAPITAL PARTNERSHIP GP II, L.P., SOCIAL+CAPITAL PARTNERSHIP GP II LTD., SOCIAL+CAPITAL PARTNERSHIP GP III LP, SOCIAL+ CAPITAL PARTNERSHIP GP III, LTD., SOCIAL+CAPITAL PARTNERSHIP OPPORTUNITIES FUND GP L.P., AND SOCIAL+CAPITAL PARTNERSHIP OPPORTUNITIES FUND GP LTD., | **Hearing**<br>Date: June 12, 2020<br>Time: 10:00 a.m.<br>Place: Courtroom 1, 17th Floor<br>Judge: Hon. Susan Illston<br><br>Action Filed: September 19, 2019 |
| Defendants. | |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 2

II. RELEVANT PROCEDURAL BACKGROUND ................................................................ 4

    A. The Amended Complaint And Defendants' Motion To Dismiss. ............................... 4

    B. The Court's Order. ....................................................................................................... 5

III. ARGUMENT ....................................................................................................................... 6

    A. Whether Plaintiff Has Standing Is A Controlling Question Of Law. .......................... 6

    B. There Is Substantial Ground For Difference Of Opinion On Whether Plaintiff Has Pleaded Standing. ................................................................................. 7

    C. Resolution Of The Appeal In Defendants' Favor Would Materially Advance—Indeed, Would End—The Litigation. ......................................................... 9

IV. CONCLUSION .................................................................................................................. 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*,
   2006 WL 2850017 (N.D. Cal. Oct. 4, 2006) ............................................................................ 6, 8

*Amor Ministries v. Century Sur. Co.*,
   2015 WL 11251726 (S.D. Cal. June 3, 2015) ............................................................................. 6

*Asis Internet Servs. v. Active Response Grp.*,
   2008 WL 4279695 (N.D. Cal. Sept. 16, 2008) .................................................................. 7, 8, 10

*Barnes v. Osofsky*,
   373 F.2d 269 (2d Cir. 1967) ..................................................................................................... 5, 8

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1981) .................................................................................................. 6, 9

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) .................................................................................................. 4, 5

*Clark v. Martinez*,
   543 U.S. 371 (2005) ..................................................................................................................... 9

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010) ........................................................................................................ 7

*Hertzberg v. Dignity Partners, Inc.*,
   191 F.3d 1076 (9th Cir. 1999) ...................................................................................................... 5

*Hawaii ex rel. Louie v. JP Morgan Chase & Co.*,
   921 F. Supp. 2d 1059 (D. Haw. 2013) ................................................................................... 8, 10

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
   2019 WL 5269014 (N.D. Cal. Oct. 17, 2019) ............................................................................. 9

*Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*,
   2013 WL 12306438 (C.D. Cal. July 11, 2013) ................................................................... 7, 8, 9

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ............................................................................................... 3, 6, 7

*Ritz Camera & Image, LLC v. Sandisk Corp.*,
   2011 WL 3957257 (N.D. Cal. Sept. 7, 2011) .............................................................................. 7

*Roberts v. AT&T Mobility LLC*,
   2016 WL 3476099 (N.D. Cal. June 27, 2016) .......................................................................... 7, 8

*United States v. Real Prop. & Improvements Located at 2441 Mission St., S.F., Cal.*,
  2014 WL 1350914 (N.D. Cal. Apr. 4, 2014) ............................................................................... 7

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  623 F. Supp. 1466 (W.D. Wash. 1985) ..................................................................................... 9

**Statutes**

15 U.S.C. § 77l(a)(2) .......................................................................................................................... 4

28 U.S.C. § 1292(b) ..................................................................................................................... 1, 6

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 12, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 1, 17th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Slack Technologies, Inc. ("Slack"), Stewart Butterfield, Allen Shim, Brandon Zell, Andrew Braccia, Edith Cooper, Sarah Friar, John O'Farrell, Chamath Palihapitiya, Graham Smith, Accel Growth Fund IV Associates L.L.C., Accel Growth Fund Investors 2016 L.L.C., Accel Leaders Fund Associates L.L.C., Accel Leaders Fund Investors 2016 L.L.C., Accel X Associates L.L.C., Accel Investors 2009 L.L.C., Accel XI Associates L.L.C., Accel Investors 2013 L.L.C., Accel Growth Fund III Associates L.L.C., AH Equity Partners I L.L.C., A16Z Seed-III LLC, Social+Capital Partnership GP II L.P., Social+Capital Partnership GP II Ltd., Social+Capital Partnership GP III L.P., Social+Capital Partnership GP III Ltd., Social+Capital Partnership Opportunities Fund GP L.P., and Social+Capital Partnership Opportunities Fund GP Ltd., through their undersigned counsel, will, and hereby do, move pursuant to 28 U.S.C. section 1292(b) for an order certifying an immediate interlocutory appeal from this Court's April 21, 2020 order granting in part and denying in part Defendants' Motion to Dismiss Amended Class Action Complaint for Violations of Federal Securities Laws (the "Order"). This Motion is based on this Notice, the supporting Memorandum of Points and Authorities, the Declaration of Michael J. Kahn ("Kahn Decl.") filed concurrently herewith, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing on the Motion.

Defendants seek certification for an interlocutory appeal of this Court's ruling in the Order that Plaintiff has adequately pleaded standing under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Securities Act") even though Plaintiff did not and cannot allege that he purchased shares registered under, and traceable to, Slack's Registration Statement. Order at 14, 17. Certification of this ruling for an interlocutory appeal is appropriate because (i) whether Plaintiff has standing is "a controlling question of law"; (ii) "there is substantial ground for difference of opinion" whether Plaintiff has pleaded standing; and (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should certify the following question for interlocutory appeal: Can a plaintiff plead standing under Sections 11 and 12(a)(2) of the Securities Act by alleging that it purchased shares "pursuant and/or traceable" to an issuer's registration statement and prospectus where shares both registered under the registration statement and exempt from the registration and prospectus delivery requirements of the Securities Act were immediately available for sale when the issuer went public, and thus the plaintiff in fact cannot trace its shares to the registration statement or prospectus?

## I.   INTRODUCTION

Slack's motion to dismiss presented a question of first impression: whether the well-established tracing requirement of Section 11 of the Securities Act applies where a company becomes publicly traded by means of a "direct listing." As the Court recognized, the idea of a direct listing, in which the company itself does not sell stock but allows its existing stockholders to do so, is a recent creation; Slack is only the second prominent company ever to be listed publicly in this manner. It will not, however, be the last, and the question of how the securities laws should apply to such listings has been a matter of intense interest for the bar and investment community.

Slack's position in its motion to dismiss was straightforward: existing Ninth Circuit law requiring putative plaintiffs under Section 11 to "trace" their shares to those registered by the allegedly defective registration statement required dismissal of this action. Section 11, by its terms, applies only to purchasers of "such security"—an admittedly ambiguous phrase that could reasonably support more than one definition. In the context of traditional securities offerings, however, the Ninth Circuit has uniformly interpreted "such security" narrowly such that a plaintiff has the burden of demonstrating that its securities were originally issued pursuant to the allegedly defective registration statement—*i.e.*, that the securities are "traceable." This Court, however, held in the Order that "such security" should be given a broader definition in the context of a direct listing and include any shares purchased following the direct listing, even if they are not traceable to the registration statement.

The Court's decision is unusually important both legally and practically, as commenters already have observed. *See, e.g.*, Kahn Decl. Ex. D (article analyzing the Order). Not only do the parties to this action desire certainty about whether Plaintiff has standing (for obvious reasons), but numerous companies that are contemplating a direct listing are deeply focused on the question as they assess their options for going public. This novel and important legal question is one on which reasonable jurists can disagree and thus should be certified for interlocutory review under Section 1292(b)'s three-part test.

*First*, the standing question is a controlling question of law. If the Ninth Circuit agrees with Defendants' arguments that Plaintiff has not pleaded (and likely cannot plead) standing, then this action will end. Because resolution of the appeal in Defendants' favor would be outcome-dispositive, the question presented by the proposed appeal is, by definition, controlling.

*Second*, there is a substantial ground for difference of opinion on whether Plaintiff has pleaded standing. "Courts traditionally will find that substantial ground for difference of opinion exists where novel and difficult questions of first impression are presented," because all that is required is the existence of "an issue over which reasonable judges might differ." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (internal quotation marks and citations omitted). There is no dispute that the standing issue in this case presents a question of first impression; indeed, the Court has already made that clear. *See* Order at 10 (noting that the issue "appears to be one of first impression"). And reasonable jurists could disagree with this Court's ruling on standing given that, as the Court recognized, the Ninth Circuit previously endorsed a different, narrower, interpretation of Section 11 than the one adopted in the Order. *Id.* at 9. This difficult standing question of first impression on which this Court reached a result that is in tension with Ninth Circuit precedent is a prototypical candidate for interlocutory appeal.

*Third*, an appeal would materially advance this litigation. This action is still at the pleading stage. No discovery has commenced, and the whole life of the litigation—class certification, summary judgment, and trial—is still ahead of the parties and the Court. However, if an appeal is decided in Defendants' favor, then this litigation will end. Resolving the threshold standing issue in

1  this case could avoid unnecessary litigation, conserving both the Court's and the parties' resources
2  and time.  For all of these reasons, the Court should certify its Order for interlocutory appeal.

## II.   RELEVANT PROCEDURAL BACKGROUND

### A.   The Amended Complaint And Defendants' Motion To Dismiss.

Plaintiff Fiyyaz Pirani filed his Amended Class Action Complaint for Violations of Federal Securities Laws ("Amended Complaint") on January 6, 2020, asserting claims under Sections 11, 12(a)(2), and 15 of the Securities Act in connection with Slack's direct listing on the New York Stock Exchange.  ECF No. 42.  Defendants moved to dismiss the Amended Complaint on January 21, 2020.  ECF No. 52.  As relevant to this motion, Defendants argued that the Amended Complaint should be dismissed because the unique features of Slack's direct listing—which is different from a traditional IPO in that, among other things, Slack itself sold no shares and raised no money (*see id.* at 4-5)—preclude Plaintiff from pleading that he has standing to assert his Securities Act claims.  Specifically, Defendants argued that Plaintiff did not and cannot plead that he purchased shares "issued under" or traceable to "a [] registration statement" as required to establish standing under Section 11, *see In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013), because (i) shares both registered under Slack's Registration Statement and exempt from the registration requirements of the Securities Act were immediately available for sale when Slack went public, and (ii) Plaintiff concededly has no idea which he purchased.  ECF No. 52 at 7-9.  Defendants argued that Plaintiff failed to plead Section 12(a)(2) standing for the same reason, *i.e.*, he did not and cannot allege that he purchased shares sold "by means of a prospectus" as required because only registered shares, not unregistered shares, were sold pursuant to a prospectus.  *Id.* at 10-11 (quoting 15 U.S.C. § 77l(a)(2)).

Plaintiff's opposition to the Motion to Dismiss acknowledged that whether a direct listing like Slack's bars shareholders from establishing Sections 11 and 12(a)(2) standing is "a matter of first impression."  ECF No. 63 at 1.  Plaintiff further conceded that he did not know whether he had purchased shares that had been registered under Slack's Registration Statement or sold by means of a prospectus.  Nor did he dispute that Ninth Circuit precedent required him to plead that his "'shares were issued under the allegedly false or misleading registration statement,'" or that multiple cases "hold[] that plaintiffs lack Section 11 standing where the market contains a mixture of registered and

non-registered stock"—as is the case here. *Id.* at 9 (quoting *Century Aluminum*, 729 F.3d at 1106). Instead, Plaintiff made a policy argument that dismissing his case for lack of standing—which he all but conceded is required under controlling Ninth Circuit precedent—would be unfair and create a "loophole that would undermine Section 11." *Id.* at 10; *see id.* at 8-9.

In Defendants' reply brief, Defendants pointed out that Plaintiff's policy argument is directly at odds with how the Ninth Circuit (and many other courts) have interpreted Sections 11 and 12(a)(2), in particular the requirement that plaintiff's shares be traceable to the allegedly misleading registration statement/prospectus. ECF No. 66 at 1-5. Plaintiff's policy arguments could be raised with Congress or the SEC, as courts dismissing similar policy arguments have suggested. *Id.* at 1-2, 3-4, 6.

**B.     The Court's Order.**

The Court issued its Order on April 21, 2020. ECF No. 74. The Court stated that the standing issue presented in this case "appears to be one of first impression . . . because Slack's direct listing on the NYSE is the result of a new regulatory development." *Id.* at 10; *see also id.* at 11 ("this case presents a question of apparent first impression"). The Court observed that, to have standing under Section 11, the Ninth Circuit requires a plaintiff to plead that its shares are traceable to the allegedly misleading registration statement. *Id.* at 9. The Court further observed the apparent "impossibility of tracing" shares in this case because both registered and unregistered shares were "available for purchase on the NYSE immediately" upon Slack's direct listing. *Id.* at 11. However, the Court held that the tracing requirement previously mandated by the Ninth Circuit should not apply "in this unique circumstance." *Id.* at 13-14.

The Court based its holding on an interpretation of the words "such security" in Section 11. While the Court recognized that the Ninth Circuit held in *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080 (9th Cir. 1999), that "such security" means a security issued pursuant to a registration statement—which is why tracing has always been required to establish Section 11 standing—the Court stated that "such security" is also susceptible to a "broader reading" that permits standing where a shareholder "'acquir[ed] a security of the same nature as that issued pursuant to the registration statement.'" Order at 8-9 (quoting *Barnes v. Osofsky*, 373 F.2d 269, 271 (2d Cir. 1967)).

The Court noted that no court had—prior to the Order—adopted this "broader reading" of Section 11. *Id.* at 12 (the "broader meaning . . . has yet to be examined"). Yet the Court reasoned it had "good reason for doing so" in this case because applying the "narrow reading" previously endorsed by the Ninth Circuit and other courts would result in "[t]he elimination of civil liability under the Securities Act" for direct listings like Slack's, which would be "at variance with the policy of this remedial legislation." *Id.* at 12-13. Accordingly, the Court held that, although the Ninth Circuit has previously interpreted the words "such security" in Section 11 to have the "narrow" meaning, "in this unique circumstance" those words should be given the "broader reading" so that shareholders have standing regardless of whether they purchased registered or unregistered shares. *Id.* at 13-14. Under the same rationale, the Court also held that Plaintiff has standing under Section 12(a)(2). *Id.* at 17.

### III.   ARGUMENT

The Court should certify for interlocutory appeal its ruling on this issue of "first impression" under Sections 11 and 12(a)(2). *Id.* at 10. Certification of a non-final order for interlocutory appeal is appropriate where (i) an "order involves a controlling question of law"; (ii) "there is substantial ground for difference of opinion"; and (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Reese*, 643 F.3d at 687-88 (taking interlocutory appeal from order on motion to dismiss). All of these requirements are met here.

### A.   Whether Plaintiff Has Standing Is A Controlling Question Of Law.

Plaintiff's standing to assert his Securities Act claims is undoubtedly a controlling question of law. "[F]or a question to be 'controlling,'" "all that must be shown . . . is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). Moreover, "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*, 2006 WL 2850017, at *2 (N.D. Cal. Oct. 4, 2006) (internal quotation marks and citation omitted); *see also Amor Ministries v. Century Sur. Co.*, 2015 WL 11251726, at *3 (S.D. Cal. June 3, 2015) (there is "no doubt" that resolving question that "would have ended this litigation" is controlling).

Here, of course, reversal of the Order's holding on standing would "terminate the action" because it would result in the Amended Complaint being dismissed with prejudice. Accordingly, whether Plaintiff has standing is a controlling question of law. *See, e.g.*, *Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695, at *3 (N.D. Cal. Sept. 16, 2008) (question of statutory standing "is a controlling question of law" because "if the Court of Appeal finds Plaintiffs do not have standing under the CAN-SPAM Act, the litigation would end"); *Ritz Camera & Image, LLC v. Sandisk Corp.*, 2011 WL 3957257, at *1 (N.D. Cal. Sept. 7, 2011) ("The Availability of [] Standing is a Controlling Question of Law"). The first requirement for certification is clearly satisfied.

### B. There Is Substantial Ground For Difference Of Opinion On Whether Plaintiff Has Pleaded Standing.

The second requirement for certification also is met because whether Plaintiff has standing to assert his claims in connection with a direct listing like Slack's is a question of first impression about which reasonable jurists could disagree. Certification is appropriate if the appeal would involve "an issue over which reasonable judges might differ." *Reese*, 643 F.3d at 688. "Courts traditionally will find that a substantial ground for difference of opinion exists where 'novel and difficult questions of first impression are presented.'" *Id.* (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). There can be no question that reasonable jurists could disagree about the novel standing issue addressed in the Order.

*First*, certification is warranted here because, as this Court recognized, the question of whether shareholders can establish standing under Sections 11 and 12(a)(2) in connection with a direct listing like Slack's is one of "first impression." Order at 10. This fact alone is sufficient to satisfy this second requirement. This Court, and many others, have held such novel issues appropriate for certification under Section 1292(b). *See United States v. Real Prop. & Improvements Located at 2441 Mission St., S.F., Cal.*, 2014 WL 1350914, at *3 (N.D. Cal. Apr. 4, 2014) (Illston, J.) (certifying for appeal "a novel issue" that "presented a difficult question of first impression on which fair-minded jurists might disagree"); *Reese*, 643 F.3d at 688 (taking jurisdiction over same); *Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*, 2013 WL 12306438, at *7 (C.D. Cal. July 11, 2013) ("matters of first impression . . . are good candidates for interlocutory appeal."); *Roberts v.*

*AT&T Mobility LLC*, 2016 WL 3476099, at *2 (N.D. Cal. June 27, 2016) (certifying order involving "novel and difficult questions of first impression").  The Court should follow suit here.

*Second*, reasonable jurists could disagree with the Order's holding regarding standing and the meaning of "such security" in Section 11.  *Supra* at 5-6.  While it has long been observed that there are two reasonable definitions of that phrase, as the Court noted, every court to consider the issue has heretofore defined "such security" to mean a "security issued pursuant to the registration statement." *Id.*  This Court, however, reasoned that a broader definition should apply in this context to encompass securities not issued pursuant to a registration statement. *Id.*  To be sure, this is the first case in which a court has been called on to define "such security" in the context of a direct listing.  But this Court acknowledged it is the first one to ever adopt the broader definition in *any* context.  Order at 12 (the "broader meaning . . . has yet to be examined").  This supports certification under Section 1292(b). *See Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1067 (D. Haw. 2013) (granting certification where "other courts have reached conclusions different from this Court's on the issue of the proper definition of 'interest' under the National Bank Act"); *see also Advanced Analogic*, 2006 WL 2850017 at *2 (substantial ground for difference of opinion existed where "district courts have reached varying conclusions in cases arguably bearing" on the "specific issue"); *Asis*, 2008 WL 4279695, at *3 (granting certification where the "Court departed from the reasoning of other district court opinions"); *Nat'l Credit Union*, 2013 WL 12306438, at *7 (granting certification where "reasonable jurists could and have differed when interpreting the statute or similar statutes.").[1]

*Finally*, the Court should grant certification because the Order is in tension with Ninth Circuit precedent.  After describing the Second Circuit's holding in *Barnes* that "such security" means a security issued under the allegedly misleading registration statement—*i.e.*, the "narrow reading" of

---

[1] Further supporting the conclusion that reasonable jurists could disagree, both the defense *and* the plaintiffs' bar believed that Ninth Circuit law supported Defendants' argument that Plaintiff could not plead Section 11 standing here.  For example, Labaton Sucharow, a prominent plaintiff-side securities litigation firm, wrote that Defendants "raised a compelling argument" that "any putative plaintiff will be unable to establish traceability," which it concluded was "technically accurate." Kahn Decl. Ex. A at 3.  Other sophisticated practitioners agreed that shareholders cannot plead standing in connection with direct listings.  *See id.* Exs. B at 2-3; C at 3.

"such security"—the Court recognized that "[t]he Ninth Circuit has followed suit in its interpretation." Order at 9. The Court then recognized that the Ninth Circuit's tracing requirement follows from its "narrow" interpretation of "such security." *Id.* However, the Court determined that it should apply a broader meaning of "such security" in this case because of the nature of direct listings. *Id.* at 11. Under the Court's holding, therefore, the meaning of the words in the statute changes depending on the context. The general rule, however, is that statutory text should only have a single meaning. *See, e.g.*, *Clark v. Martinez*, 543 U.S. 371, 386 (2005) (rejecting "the dangerous principle that judges can give the same statutory text different meanings in different cases"). The Court's holding here may be correct (although Defendants respectfully disagree), but it should not be controversial to suggest that this holding is in tension with current Ninth Circuit law that assigns the statute's words a single and non-context-dependent meaning. Under such circumstances, it is appropriate to certify the Order for appeal. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 623 F. Supp. 1466, 1476 (W.D. Wash. 1985) (certifying for appeal ruling that there is no private right of action under § 17(a) of Securities Act because ruling was "in apparent conflict with existing Ninth Circuit authority").

### C. Resolution Of The Appeal In Defendants' Favor Would Materially Advance—Indeed, Would End—The Litigation.

Finally, there should be no question that the last requirement of Section 1292(b) is satisfied: an immediate appeal of the Order's holding on standing would "avoid protracted and expensive litigation." *In re Cement*, 673 F.2d at 1026. It is well-established that "resolution of a question materially advances the termination of litigation if it 'facilitate[s] disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later [in order to] save the courts and the litigants unnecessary trouble and expense.'" *Nat'l Credit Union*, 2013 WL 12306438, at *8 (citation omitted). Here, if the Ninth Circuit agrees with Defendants that Plaintiff lacks standing under Sections 11 and 12(a)(2), then this case will be dismissed and substantial litigation costs and efforts will be avoided. As this Court has recognized, this is all that is required to satisfy the third requirement for certification. *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 2019 WL 5269014, at *4 (N.D. Cal. Oct. 17, 2019) (Illston, J.) ("interlocutory review is in the interest of

judicial economy and will save the parties a considerable amount of time and expense"); *see also Asis*, 2008 WL 4279695, at *3 (requirement satisfied where appellate decision "would result in dismissal"); *Louie*, 921 F. Supp. 2d at 1068 (same, where proceeding in district court "will have unnecessarily wasted significant time and resources" if the Ninth Circuit reversed).

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court certify its Order for immediate interlocutory appeal.

DATED: May 5, 2020

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Michael D. Celio
MICHAEL D. CELIO, SBN 197998
RAENA FERRER CALUBAQUIB, SBN 328794
1881 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MATTHEW S. KAHN, SBN 261679
MICHAEL J. KAHN, SBN 303289
555 Mission St. Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendants Slack Technologies, Inc., Stewart Butterfield, Allen Shim, Brandon Zell, Andrew Braccia, Edith Cooper, Sarah Friar, John O'Farrell, Chamath Palihapitiya, Graham Smith, Accel Growth Fund IV Associates L.L.C., Accel Growth Fund Investors 2016 L.L.C., Accel Leaders Fund Associates L.L.C., Accel Leaders Fund Investors 2016 L.L.C., Accel X Associates L.L.C., Accel Investors 2009 L.L.C., Accel XI Associates L.L.C., Accel Investors 2013 L.L.C., Accel Growth Fund III Associates L.L.C., AH Equity Partners I L.L.C., A16Z Seed-III LLC, Social+Capital Partnership GP II L.P., Social+Capital Partnership GP II Ltd., Social+Capital Partnership GP III L.P., Social+Capital Partnership GP III Ltd., Social+Capital Partnership Opportunities Fund*

| | |
|---|---|
| 1 | *GP L.P., and Social+Capital Partnership Opportunities Fund GP Ltd.* |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |