# Exhibit D

May 1, 2020

# Courts Cut Shareholders Slack on Section 11 Claims



Nicki Locker, Laurie Smilan

Wilson Sonsini Goodrich & Rosati

+ Follow     Contact



WILSON SONSINI

The premier provider of legal services to technology, life sciences, and growth enterprises worldwide

In the past several years, the number of claims filed against newly public companies under Section 11 of the Securities Act of 1933 has increased exponentially.[1] Unfortunately, Section 11 packs quite a punch. Unlike fraud claims under the securities laws which require proof of reckless or intentional misconduct, Section 11 imposes *strict liability* against the issuer for innocent or merely negligent misstatements in a registration statement and permits recovery for any decline below the stock's initial offering price.[2] Individual defendants can escape liability only by proving their good faith—a factual inquiry rarely resolved at the pleading stage. The one factor counterbalancing Section 11's low liability standards and harsh penalties is that standing to bring such claims is strictly limited. Under the statute, only those who purchased stock registered in the offering can assert a Section 11 claim. However, last week's decision in *Slack*, together with a few other recent cases, suggest that at least some courts may be willing to cut shareholder plaintiffs some slack by loosening this heretofore strictly construed standing requirement, thereby expanding potential Section 11 liability.

For the last half-century, most courts, recognizing Section 11's deliberate statutory balance between low liability standards and strictly limited standing requirements, insisted that plaintiffs demonstrate that their shares were bought in or were directly traceable to the offering.[3] Thus, once *any* non-IPO-registered shares come into the market, whether by means of a secondary offering or through sales of shares exempt from registration under the securities laws, courts routinely rejected Section 11 claims asserted by subsequent purchasers since tracing their shares to the offering statement became impossible. These courts rejected arguments that it was statistically likely that at least some of the shares purchased in the aftermarket were issued in the offering as well as policy-based appeals concerning perceived inequities in denying some after-market purchasers a Section 11 remedy.

Recently, some newly public companies have structured their IPOs in ways that permit unregistered shares to be sold sooner rather than later in order to provide liquidity to early private investors and/or employees. Two such strategies include 1) direct offerings (which permit immediate sales of both registered and unregistered stock by existing private shareholders) and 2) exceptions or carve-outs to the strictures of underwritten IPO lock-ups, which otherwise typically limit the sale of non-registered securities for a 180 day-period after the offering. Some practitioners mused that a collateral effect of such no- or limited-lockup offerings might be to eliminate or limit Section 11 liability, based on the long line of cases strictly construing the tracing requirement.[4]

The early results suggest to the contrary. In several recent cases where non-registered shares were sold simultaneously with or shortly after the offering, circumstances where strict application of tracing requirement would have significantly limited or eliminated Section 11 claims, courts have balked at the idea of denying shareholders a Section 11 remedy. To date, several California federal courts instead relaxed the tracing requirement, allowing such claims to proceed and/or Section 11 classes to be certified. Just last week, in a case against *Slack*, which involved one of the first direct offerings and the first to be tested in the courts, the Northern District of California rejected arguments that the plaintiffs lacked standing to assert Section 11 claims even though both registered and unregistered exempt shares were simultaneously sold in the company's direct listing.[5] Similarly, in two recent cases the Central District of California certified broad Section 11 classes, refusing to cut off such claims after exempt unregistered securities were sold into the market shortly after the offering. Instead, the Central District accepted the plaintiffs' "statistical tracing" theory, in cases where the unregistered shares constituted only a small percentage of the total shares outstanding, even while acknowledging that most courts rejected this statistical approach.

The specific reasoning in *Slack* and these other cases suggests two possible approaches that might succeed in limiting Section 11 liability. In *Slack*, the district court distinguished prior contrary cases on the grounds that none involved simultaneous sales of both registered and unregistered securities as opposed to distinct offerings separated in time and limited its holding to these "unique circumstance[s]," thereby suggesting that some indeterminate time lapse between the offering and subsequent sales of unregistered shares might make a difference. Conversely, in the statistical tracing cases, the courts were unimpressed by the small number of unregistered shares that made their way into the market soon after the offerings, leaving open the possibility that the relatively large number of unregistered shares sold in *Slack* might have been enough.

Efforts to navigate this slippery slope, however, might only lead to further erosion of long-standing, strict tracing requirements, since the courts in *Slack* and these other cases buttressed their reasoning, limited to the specific facts before them, with a broader appeal to policy, evidencing a more general reluctance to preclude or limit a Section 11 remedy at least at an early

stage in the litigation. As a policy matter, these courts chose to deviate from the tracing requirement imposed by prior precedents, even while acknowledging that those earlier decisions determined that any expansion of Section 11's limited standing requirements was for Congress, not the courts.

In sum, *Slack* and these other recent decisions are at odds with the carefully-balanced statutory scheme and decades of consistent, reasoned judicial authority requiring tracing and rejecting statistical evidence that shares were "likely" to have been issued in the offering. If not overturned and if widely followed, these decisions may portend that any expectation that direct listings or early carve-outs to IPO lockups might limit Section 11 exposure is uncertain, and that, instead, the relaxation of tracing requirements to permit claims in these circumstances may operate to extend such liability beyond what the 1933 Congress intended.

---

[1] https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Filings-2019-Year-in-Review at 24-28. One bright note: While in the past few years many Section 11 cases were filed in less sophisticated state courts which typically apply more liberal pleading standards, either alone or in parallel with near-identical cases in federal courts, Wilson Sonsini's recent Delaware Supreme Court victory has vindicated the right of Delaware public companies to require shareholders to bring such claims solely in federal courts. *Salzberg et al. v. Sciabacucchi*, No. 346, 2019 (Del. Mar. 18, 2020), https://www.wsgr.com/en/insights/delaware-supreme-court-rules-federal-forum-selection-charter-provisions-are-valid.html.

[2] Defendants can attempt to establish "negative causation" and limit damages where extraneous market or other factors contributed to the decline, but this affirmative defense is not resolvable at early stages of the litigation.

[3] *See*, e.g., *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013) (citing *Barnes v. Osofsky*, 373 F.2d 269 (2d Cir. 1967).)

[4] *See* https://corpgov.law.harvard.edu/2020/02/25/carving-out-ipo-protections/; https://corpgov.law.harvard.edu/2015/03/13/a-modest-strategy-for-combatting-frivolous-ipo-lawsuits/.

[5] *Pirani v. Slack Technologies, Inc.*, Case No. 19-cv-0587-SI, slip op. (N.D. Cal. Apr. 21, 2020) (order on the defendants' motion to dismiss).

  

## LATEST POSTS

Case 3:19-cv-05857-SI   Document 77-4   Filed 05/05/20   Page 5 of 6

- **Six Bay Area Counties Update Shelter-in-Place Orders Related to COVID-19: What Employers Need to Know**

- **Principal Tax Issues in Debt Restructurings**    •  **The PTAB Review - April 2020**

- **CFIUS Filing Fees Finalized: Prepare to Pay (or Not)**

- **Courts Cut Shareholders Slack on Section 11 Claims**

See more »

DISCLAIMER: Because of the generality of this update, the information provided herein may not be applicable in all situations and should not be acted upon without specific legal advice based on particular situations.

© Wilson Sonsini Goodrich & Rosati 2020 | Attorney Advertising

---

**WRITTEN BY:**

 Wilson Sonsini Goodrich & Rosati

Contact      + Follow

---

 Nicki Locker                                        + Follow

---

 Laurie Smilan                                      + Follow

---

**PUBLISHED IN:**

Section 11                                                       + Follow

---

Securities Act of 1933                                           + Follow

---

Shareholders                                                     + Follow

---

Securities                                                       + Follow

---

**WILSON SONSINI GOODRICH & ROSATI ON:**

