GIBSON, DUNN & CRUTCHER LLP
MICHAEL D. CELIO, SBN 197998
RAENA FERRER CALUBAQUIB, SBN 328794
1881 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MATTHEW S. KAHN, SBN 261679
MICHAEL J. KAHN, SBN 303289
555 Mission St. Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER DENNEE,<br><br>                Plaintiff,<br><br>      v.<br><br>SLACK TECHNOLOGIES, INC., STEWART BUTTERFIELD, ALLEN SHIM, BRANDON ZELL, ANDREW BRACCIA, EDITH COOPER, SARAH FRIAR, JOHN O'FARRELL, CHAMATH PALIHAPITIYA, GRAHAM SMITH, ACCEL GROWTH FUND IV ASSOCIATES L.L.C., ACCEL GROWTH FUND INVESTORS 2016 L.L.C., ACCEL LEADERS FUND ASSOCIATES L.L.C., ACCEL LEADERS FUND INVESTORS 2016 L.L.C., ACCEL X ASSOCIATES L.L.C., ACCEL INVESTORS 2009 L.L.C., ACCEL XI ASSOCIATES L.L.C., ACCEL INVESTORS 2013 L.L.C., ACCEL GROWTH FUND III ASSOCIATES L.L.C., AH EQUITY PARTNERS I L.L.C., A16Z SEED-III LLC, SOCIAL+ CAPITAL PARTNERSHIP GP II, L.P., SOCIAL+CAPITAL PARTNERSHIP GP II LTD., SOCIAL+CAPITAL PARTNERSHIP GP III LP, SOCIAL+ CAPITAL PARTNERSHIP GP III, LTD., SOCIAL+CAPITAL PARTNERSHIP OPPORTUNITIES FUND GP L.P., AND SOCIAL+CAPITAL PARTNERSHIP OPPORTUNITIES FUND GP LTD.,<br><br>                Defendants. | Case No. 3:19-cv-05857-SI<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)**<br><br>**<u>Hearing</u>**<br>Date: June 12, 2020<br>Time: 10:00 a.m.<br>Place: Courtroom 1, 17th Floor<br>Judge: Hon. Susan Illston<br><br>Action Filed: September 19, 2019 |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT .................................................................................................................... 2

    A.    There Is Substantial Ground For Difference Of Opinion On The
    Order's Rulings. ....................................................................................................... 2

    B.    Whether Plaintiff Has Standing Is A Controlling Question Of Law,
    And Resolution Of The Appeal In Defendants' Favor Would Materially
    Advance The Litigation. .......................................................................................... 7

III.  CONCLUSION ................................................................................................................ 9

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abbey v. Comput. Memories, Inc.*,
634 F. Supp. 870 (N.D. Cal. 1986) ...............................................................................................5

*Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*,
2006 WL 2850017 (N.D. Cal. Oct. 4, 2006).................................................................................7

*Ahrenholz v. Bd. of Trustees of Univ. of Illinois*,
219 F.3d 674 (7th Cir. 2000)........................................................................................................8

*Allen v. Conagra Foods, Inc.*,
2013 WL 6000456 (N.D. Cal. Nov. 12, 2013)..........................................................................7, 8

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981)...................................................................................................7, 9

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013)......................................................................................................5

*Clark v. Martinez*,
543 U.S. 371 (2005)..................................................................................................................2, 4

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010).........................................................................................................4

*In re Crazy Eddie Sec. Litig.*,
792 F. Supp. 197 (E.D.N.Y. 1992) ..............................................................................................5

*Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*,
854 F. Supp. 2d 756 (C.D. Cal. 2011) .........................................................................................3

*F.T.C. v. Swish Mktg.*,
2010 WL 1526483 (N.D. Cal. Apr. 14, 2010) .............................................................................4

*Flores v. Velocity Express, LLC*
2015 WL 4463639 (N.D. Cal. July 21, 2015)...............................................................................4

*Gorenberg v. Butterfield*,
1:20-cv-00625-LPS (D. Del.)........................................................................................................9

*Hertzberg v. Dignity Partners, Inc.*,
191 F.3d 1076 (9th Cir. 1999).......................................................................................................2

*Hightower v. Schwarzenegger*,
2009 WL 3756342 (E.D. Cal. Nov. 6, 2009)................................................................................8

Gibson, Dunn &
Crutcher LLP

*Home Depot U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*,
  2019 WL 6171063 (N.D. Cal. Nov. 20, 2019)..............................................................................7

*Jensen v. iShares Tr.*,
  44 Cal. App. 5th 618 (Cal. Ct. App. 2020) ...............................................................................5

*Johnson v. Serenity Transp., Inc.*,
  2017 WL 3168491 (N.D. Cal. July 26, 2017)............................................................................7

*Kirchmann v. Butterfield*,
  1:20-cv-00567-LPS (D. Del.)......................................................................................................9

*Knopp v. Butterfield*,
  1:20-cv-00566-LPS (D. Del.)......................................................................................................9

*Krim v. pcOrder.com, Inc.*,
  402 F.3d 489 (5th Cir. 2005)..................................................................................................2, 5

*Hawaii ex rel. Louie v. JP Morgan Chase & Co.*,
  921 F. Supp. 2d 1059 (D. Haw. 2013) ...............................................................................6, 7, 8

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
  2019 WL 5269014 (N.D. Cal. Oct. 17, 2019)............................................................................8

*Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*,
  2013 WL 12306438 (C.D. Cal. July 11, 2013) ..........................................................................3

*Paz v. AG Adriano Goldschmeid, Inc.*,
  2015 WL 12910749 (S.D. Cal. Jan. 27, 2015)...........................................................................4

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011)......................................................................................................3

*Roberts v. AT&T Mobility LLC*,
  2016 WL 3476099 (N.D. Cal. June 27, 2016) ...........................................................................4

*In re Slack Techs., Inc. S'holder Litig.*,
  No. 19-CIV05370 (Cal. Super. Ct. San Mateo Cty.) .................................................................9

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  2011 WL 250317 (N.D. Cal. Jan. 25, 2011) ..............................................................................8

*Stiner v. Brookdale Senior Living, Inc.*,
  383 F. Supp. 3d 949 (N.D. Cal. 2019) .......................................................................................4

*United States v. Real Prop. & Improvements Located at 2441 Mission St., Cal.*,
  2014 WL 1350914 (N.D. Cal. Apr. 4, 2014) .............................................................................3

*Vasquez v. Libre by Nexus, Inc.*,
  2018 WL 9868570 (N.D. Cal. Nov. 20, 2018)...........................................................................7

iii

## I.    INTRODUCTION

This Court's holding that investors who purchase shares in a direct listing need not be able to "trace" their shares to allegedly misleading offering documents to pursue claims under Sections 11 and 12(a)(2) of the Securities Act was groundbreaking.  Prior courts had uniformly required plaintiffs to demonstrate that they could make that linkage, no matter the context in which the case arose.  But because Plaintiff in this action candidly admitted that he could not demonstrate such tracing, this Court held that Plaintiff was not required to establish tracing, reasoning that the words "such security" in Section 11 had to be read in light of the remedial purpose of the Securities Act.  In so doing, this Court broke with three lines of precedent:  (1) the established definition of "such security," as held by the Ninth Circuit and every other court to interpret the term; (2) the rule, reflected in Supreme Court precedent, that words in a statute can have only one meaning; and (3) the several courts that have faced the same dilemma presented by Plaintiff's allegations—whether tracing is still required even where it may be impossible—but nonetheless applied the rule requiring tracing despite arguments that doing so may undermine the remedial purpose of the Securities Act.  This Court plainly understood the breadth and import of its decision, noting that the issues presented were of first impression and thoroughly and carefully analyzing those issues before ruling.  An order of this sort is the paradigmatic case for interlocutory review.

As set forth in Defendants' Motion, the tripartite test for certifying the Court's Order for interlocutory appeal is thus easily met here:  the Order involves a controlling question of law, there is a substantial ground for difference of opinion on the resolution of that controlling question, and an appeal will materially advance this litigation.  That the requirement (or not) of "tracing" is controlling would seem beyond dispute: if tracing is required to plead standing, but Plaintiff cannot plead tracing, this case is at an end.  For the exact same reason, the resolution of this pure legal question at this early phase of the case will materially advance this litigation.  And, indeed, in his Opposition Plaintiff puts up only the most facile of arguments on these points.  As set forth below, he simply ignores the ample authority that demonstrates that those requirements are met here.  *See* Section II(B), *infra.*

The bulk of Plaintiff's Opposition is devoted to arguing there is not substantial ground for difference of opinion.  But he ignores that this Court itself recognized in the Order that there is a long

line of precedent in which reasonable jurists, including those on the Ninth Circuit, have come to a different conclusion regarding the meaning of "such security"—even in cases where, as here, tracing may be impossible. Nor is Plaintiff right to argue that the issues confronted by the Order are "not [] difficult" (Opp. at 6). In order to reach its holding, the Order had to grapple with at least three complex issues. *First*, what does the term "such security" mean? *Second*, can that term have different meanings in different contexts? *Third*, does furthering the remedial purpose of the Securities Act justify applying a "broader" meaning of the term in the instant context where tracing may not be possible? The Order tackled these serious questions in a methodical and scholarly fashion over many pages; there was nothing "easy" about it.

Indeed, the Order needed to carefully address these three thorny issues, because other courts have reached different results on all three of them. The Ninth Circuit has said "such security" has a "narrow" meaning, not a "broad" one, *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080 & n.4 (9th Cir. 1999) (cited in Order at 9); the Supreme Court has said statutory language can have only one meaning, not two, *Clark v. Martinez*, 543 U.S. 371, 386 (2005); and several courts have held the remedial purpose of the Securities Act does not permit jettisoning the tracing requirement even where tracing may be impossible, *see, e.g.*, *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 497-98 (5th Cir. 2005). In other words, it is not just that reasonable jurists *may* disagree with the Order's holding that tracing does not apply to Section 11 cases arising out of direct listings (with a related requirement under Section 12(a)(2)); reasonable jurists *already have* disagreed with the Court on the three core legal questions underpinning the Order's ultimate holding.

The Order thus presents a clear case for interlocutory review. Accordingly, Defendants respectfully request that the Court certify it for interlocutory appeal to the Ninth Circuit.

## II.     ARGUMENT

### A.     There Is Substantial Ground For Difference Of Opinion On The Order's Rulings.

Although Plaintiff contests all three statutory factors, the core dispute is whether there is substantial ground for difference of opinion. As the Motion explained (Mot. at 7-9), the answer is "yes" for two interrelated reasons. *First*, as the Order itself made clear, it addressed a difficult issue of first impression—the application of Sections 11 and 12(a)(2) to a direct listing like Slack's.

Difficult issues of first impression are uniquely appropriate for interlocutory review. *Second*, the Order interpreted the statutory language "such security" in a way that is contrary to existing Ninth Circuit law and results in two meanings for the same term, which in turn is inconsistent with Supreme Court precedent. The Court's decision to apply a "broader" reading of "such security" here in light of the remedial purpose of the Securities Act is further contrary to several courts that have held the "narrow" reading must apply no matter the context, even if tracing may be impossible and the purpose of the statute would be undermined. "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). That reasonable jurists *might* disagree with the Order's rulings is conclusively demonstrated by the fact that they *already have* disagreed in several respects.

Plaintiff argues in response that, because this is the first direct listing case, there cannot possibly be disagreement between reasonable jurists because there is no one with whom to disagree. Opp. at 4-5. In other words, according to Plaintiff, this case is *so novel* that it would be inappropriate to certify it for review. *Id.* at 4-5, nn.2, 4. But the Ninth Circuit has expressly rejected this very argument. The actual rule is that "[a] substantial ground for difference of opinion exists where reasonable jurists *might* disagree on an issue's resolution, *not merely where they have already disagreed.*" *Reese*, 643 F.3d at 688 (emphases added). "[A] novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Id.*; *see also Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 854 F. Supp. 2d 756, 769 (C.D. Cal. 2011) (certification is permissible "[e]ven where no conflicting case law exists"). Plaintiff's attempt to distinguish the many cases cited in the Motion on the ground that in those cases there purportedly was some existing contrary precedent is thus unavailing. *See* Opp. at 4-5, n.2, n.4. Those decisions did not turn on the existence of contrary precedent because that is not the test for certification.[1]

---

[1] *See United States v. Real Prop. & Improvements Located at 2441 Mission St., Cal.*, 2014 WL 1350914, at *3 (N.D. Cal. Apr. 4, 2014) (Illston, J.) (granting certification where the "Court was unable to find any authority on the precise issue from the Ninth Circuit or any other court of appeals," not simply because other district courts had considered related issues previously); *Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*, 2013 WL 12306438, at *7 (C.D. Cal. July 11, 2013) (granting certification where the issue was "both novel, in that the Ninth Circuit has not addressed this precise issue, and contentious, in that reasonable jurists could and have differed when interpreting the statute or similar statutes," not simply because the same issue had been certified for interlocutory appeal in

The novelty of the issue presented, however, is far from the only reason there is substantial ground for difference of opinion here. While the application of Sections 11 and 12(a)(2) to a direct listing is novel, the meaning of the term "such security" is not, and the Order's holding regarding traceability depends on the meaning of that term. *See* Order at 12-14. As the Motion demonstrated, many courts, including the Ninth Circuit, have interpreted "such security" to mean something different than the definition set forth in the Order. Mot. at 8-9. Indeed, the Order itself recognized that every court to consider the meaning of "such security" has interpreted it more narrowly than the Court to mean *only* a security issued pursuant—*i.e.*, traceable—to a registration statement. *Id.*; *see* Order at 8-9. Thus, reasonable jurists already are in disagreement here, and Plaintiff's reliance on cases where courts found no substantial ground for disagreement is thus misplaced. *See* Opp. at 3-5.[2]

The Order is also in tension with existing law in at least two other ways, which further demonstrates that reasonable jurists might come to a different conclusion than the Order. *First*, as the Motion explained and Plaintiff does not dispute, the Supreme Court has held that statutory text cannot have more than a single meaning. Mot. at 9 (citing *Clark*, 543 U.S. at 386). While statutory text may be susceptible to multiple *interpretations*, once a court has assigned a *meaning*, that meaning binds later courts. *Clark*, 543 U.S. at 378. Accordingly, reasonable jurists plainly could

two other circuits); *Roberts v. AT&T Mobility LLC*, 2016 WL 3476099, at *2 (N.D. Cal. June 27, 2016) (granting certification where "no authority has clearly defined the limits as to what constitutes encouragement, and no court has addressed the issue presented here").

2 For example, in *F.T.C. v. Swish Mktg.*, 2010 WL 1526483, at *3 (N.D. Cal. Apr. 14, 2010), the defendants "d[id] not dispute that ample controlling precedent in th[e] [Ninth] Circuit" went against them and could not point to any contrary authority anywhere else. Here, by contrast, the weight of authority runs the opposite direction. Defendants' Motion also is nothing like *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 958 (N.D. Cal. 2019), where the defendants failed to articulate a novel or conflicting question of law, and instead had presented "just an argument that the Court misapplied the existing law to the facts alleged." Finally, *Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010), *Flores v. Velocity Express, LLC*, 2015 WL 4463639 (N.D. Cal. July 21, 2015), and *Paz v. AG Adriano Goldschmeid, Inc.*, 2015 WL 12910749 (S.D. Cal. Jan. 27, 2015) do not support any other result. In *Couch*, the district court held there was *no* substantial ground for difference of opinion but certified the issue for review anyway. 611 F.3d at 634. The Ninth Circuit reversed because a substantial ground for difference of opinion is required, there did not appear to be any "law undermining the district court's holding," and defendants did "not provide[] a single case that conflict[ed] with the district court's construction or application" of the California statute at issue. *Id.* at 631, 633-34. Likewise, in *Flores*, there was "[n]o authority support[ing] Defendants' position" that successor liability should depend on the form of the succession transaction, and "the Defendants and Plaintiffs agree[d] that there [we]re no conflicting decisions within the Ninth Circuit on th[e] issue." 2015 WL 4463639, at *3. And *Paz* also involved an "absence of case law" and the defendants' arguments were based solely on "pure speculation." 2015 WL 12910749, at *2.

4

Gibson, Dunn & Crutcher LLP

disagree with the Court's decision to assign "such security" a different meaning than that already assigned by the Ninth Circuit (and other courts).  Mot. at 8-9.

*Second*, other courts have considered and rejected the argument that the remedial purpose of the Securities Act requires the abolition of the tracing requirement in cases where compliance with it might be difficult or even impossible, as the Order concluded.  For example, in *Krim*, the Fifth Circuit rejected the appellants' request that it "not hew the statutory line" under which "such security" requires tracing.  402 F.3d at 498.  Notwithstanding appellants' protests that the understood meaning of "such security" would, "in light of current market conditions, effectively preclude[] recovery under Section 11," the court held that whether "market realities . . . may render Section 11 ineffective as a practical matter . . . is an issue properly addressed by Congress," not by the courts. *Id*.  Likewise, earlier this year the California Court of Appeal considered and rejected the argument that "impossibility" justifies re-interpreting the statutory phrase "such security" to dispense with the long-established requirement to show tracing.  *Jensen v. iShares Tr.*, 44 Cal. App. 5th 618, 639-41 (Cal. Ct. App. 2020).  The court reasoned that "[i]f . . . securities markets and financial products have changed so as to undermine the protections and remedies afforded by existing securities laws, the matter requires the attention of Congress."  *Id.* at 641; *see also In re Crazy Eddie Sec. Litig.*, 792 F. Supp. 197, 202 (E.D.N.Y. 1992) (rejecting argument attacking unfairness of tracing requirement because the court was bound by Second Circuit precedent and noting "[i]f Congress wishes to ease the burden on security holders such as plaintiffs, it can do so.").[3]

Accordingly, Plaintiff is wrong to argue that reasonable jurists could not disagree with the Order's decision to effectuate "the policy of this remedial legislation" instead of enforcing the long-established tracing requirement.  *See* Opp. at 4-5.  In fact, as just shown, several courts have been

---

[3]  Of course, these courts' decisions to uphold the tracing requirement and dismiss the plaintiffs' Section 11 claims do not mean such investors "are [] entirely without recourse."  *See Jensen*, 44 Cal. App. 5th at 641-42.  They simply "are without recourse to the 'relaxed liability requirements' of the 1933 Act."  *See id.* at 642 (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013)).  However, they "may still pursue [a] lawsuit under . . . [SEC Rule] 10b-5" for securities fraud, which does not impose a strict standing requirement and permits a broader class of potential plaintiffs to sue for alleged violations of the securities law.  *See, e.g.*, *Abbey v. Comput. Memories, Inc.*, 634 F. Supp. 870, 875 (N.D. Cal. 1986); *see id.* ("Section 11 simply was not intended to provide a remedy to every person who might have been harmed by a defective registration statement.").

Gibson, Dunn & Crutcher LLP

confronted with the exact same choice as this Court, but those courts decided to enforce the tracing requirement despite the policy implications of their rulings, reasoning instead that such policy decisions are the province of other branches of government. That these other courts have reached the opposite result from the Order when balancing the policy implications of imposing the tracing requirement with the decades-old interpretation of "such security" to require traceability in all cases confirms that this requirement for certification is satisfied.

Plaintiff's final gambit is to argue that, notwithstanding this contrary authority on three aspects of the Order's analysis, certification should be denied because the issues here supposedly are not "difficult." Opp. at 3-6. Not so. The issues before the Court plainly were difficult. The Court was confronted with decades of case law interpreting "such security" that, if followed, would have required dismissal of Plaintiff's Complaint. Order at 8-11. But, as Plaintiff acknowledges, the Court was concerned that the remedial policies of the Securities Act would be frustrated by such a ruling, and therefore interpreted "such security" more broadly to permit Plaintiff's claims to proceed. *See* Order at 12-14; Opp. at 4-5. The Court only reached this conclusion after an in-depth analysis of the case law, statutory text, and Congress's intent in passing the Securities Act. Order at 8-14. An "easy" question would not have required the thought and effort this Court put into its Order.[4]

Clearly, reasonable jurists can reach—and in fact have reached—different conclusions than this Court on the several legal issues underpinning the Order's holding that tracing is not required in a direct listing case, including the meaning of "such security," whether that meaning may differ in different contexts, and whether the remedial purpose of the statute trumps the heretofore bright-line rule requiring tracing in all contexts. That is more than sufficient to find there is substantial ground for difference of opinion on this Court's ruling, as the Motion demonstrated. *See* Mot. at 8 (citing cases holding certification appropriate where courts have differed on statutory interpretation).[5]

---

[4] Plaintiff's attack on Defendants' citation to practitioner articles is misplaced. *See* Opp. at 5, n.3. The authors are seasoned practitioners from both sides of the bar with deep knowledge of the history on this issue. Their bipartisan view that Ninth Circuit law supported Defendants' argument that Plaintiff could not plead standing further shows that reasonable legal minds could disagree with the Order. *See* Kahn Decl., Exs. A-D.

[5] Plaintiff attempts to distinguish *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059 (D. Haw. 2013) because it involved six parallel complaints but nowhere explains why that

**B.    Whether Plaintiff Has Standing Is A Controlling Question Of Law, And Resolution Of The Appeal In Defendants' Favor Would Materially Advance The Litigation.**

The other two requirements for certification are met as well. *First*, whether Plaintiff has standing is clearly a controlling question of law. Mot. at 6-7. If an appeal is resolved in Defendants' favor, this action will end because Plaintiff will lack standing to proceed under Sections 11 and 12(a)(2). *Id.* Numerous authorities confirm this satisfies the "controlling question of law" requirement. *Id.* "[F]or a question to be 'controlling[,]'" "all that must be shown . . . is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) (citation omitted). Moreover, "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*, 2006 WL 2850017, at *2 (N.D. Cal. Oct. 4, 2006) (internal quotation marks and citation omitted).

Plaintiff does not address any of these authorities. Instead, he claims standing is a "mixed question of law and fact" and thus not controlling. Opp. at 6-7. That is wrong, and the Order does not "delineate this issue" in this fashion, as Plaintiff contends. *Id.* at 2. The standing issue here is purely legal, because the operative facts are *undisputed*. Plaintiff has not pleaded traceability, and he has conceded he cannot plead or prove it. If the Ninth Circuit holds he was required to plead traceability to establish standing, the case is over. No factual inquiry is required—in contrast to Plaintiff's proffered authorities, where factual analysis *was* required. *See* Opp. at 6-7.[6] Indeed, two of Plaintiff's own cases conclusively disprove his argument. They teach that "a controlling question

---

matters. *See* Opp. 5 n.4. In any event, as discussed *infra*, there are four parallel actions here: one in San Mateo County Superior Court and three in the District of Delaware. Plaintiff also says *JP Morgan Chase* focused on legal issues only, but the same is true here, as shown immediately below.

[6] *See Home Depot U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*, 2019 WL 6171063, at *2 (N.D. Cal. Nov. 20, 2019) (denying certification because court had "applied settled precedent" to defendants' motion for summary judgment and appellate court would have to analyze factual issues to determine if they merited a different approach); *Allen v. Conagra Foods, Inc.*, 2013 WL 6000456, at *3 (2013) (denying certification because appellate court would have to analyze factual issues regarding serving size and fat and calorie disclosures that were in dispute); *Vasquez v. Libre by Nexus, Inc.*, 2018 WL 9868570, at *4 (N.D. Cal. Nov. 20, 2018) (denying certification because appellate court would have to analyze factual question of whether company accused of usuriously renting ankle bracelets to ICE detainees had acted as a debt collector); *Johnson v. Serenity Transp., Inc.*, 2017 WL 3168491, at *1 (N.D. Cal. July 26, 2017) (denying certification because appellate court would have to analyze factual issues regarding alleged misclassification of drivers that had yet to be developed but needed to be).

7

Gibson, Dunn &
Crutcher LLP

of law" is one that "would not require the appellate court to delve beyond the surface of the record in order to determine the facts." *Hightower v. Schwarzenegger*, 2009 WL 3756342, at *5 (E.D. Cal. Nov. 6, 2009); *Allen*, 2013 WL 6000456, at *3 (N.D. Cal. Nov. 12, 2013) ("[I]f a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case" (quoting *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 676-677 (7th Cir. 2000))). That is precisely the case here.

Standing in particular is a prototypical controlling question of law, particularly where, as here, it is undisputed that Plaintiff has not and cannot plead the facts necessary to establish standing under Defendants' interpretation of Sections 11 and 12(a)(2). The Motion demonstrated this, citing several cases, and Plaintiff does not dispute the point or the law. Mot. at 7 (citing cases). Plaintiff himself cites only one case involving standing, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2011 WL 250317 (N.D. Cal. Jan. 25, 2011). *See* Opp. at 6, n.6. But there, the motion for certification was filed *just one month before trial*. *SRAM*, 2011 WL 250317, at *2. Further, the court determined that an appeal would not "materially affect the outcome of the litigation because [] Plaintiffs have repeatedly indicated their willingness to name an additional class representative." *Id.* Here, the case is still at the pleading stage, no class has been certified, and the standing issue will exist regardless of who the plaintiff is. *See* Order at 7.

*Second*, resolution of Defendants' appeal would "materially advance" this litigation and avoid substantial litigation costs. Mot. at 9-10. Plaintiff does not seriously dispute this point beyond speculating that an appeal could cause delay. Opp. at 2. He also insinuates that interlocutory review is often reserved only for multidistrict litigation. *Id.* at 7-8. But as this Court has recognized, the question is merely whether "interlocutory review is in the interest of judicial economy and will save the parties a considerable amount of time and expense," which it would here if the appeal is successful because it would end the case altogether. *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 2019 WL 5269014, at *4 (N.D. Cal. Oct. 17, 2019) (Illston, J.); *see also Cement*, 673 F.2d at 1026 (certification appropriate where successful appeal could "avoid protracted and expensive litigation"); *JP Morgan Chase*, 921 F. Supp. 2d at 1068 (granting certification where proceeding in

Gibson, Dunn &
Crutcher LLP

district court "will have unnecessarily wasted significant time and resources" if the Ninth Circuit reversed).

In any event, Plaintiff ignores that this case *does* involve complex litigation with several actions and dozens of parties.  In addition to this case, there is a parallel securities class action pending in San Mateo County Superior Court and three derivative actions pending in the District of Delaware all involving substantially the same parties and issues.  *See In re Slack Techs., Inc. S'holder Litig.*, No. 19-CIV05370 (Cal. Super. Ct. San Mateo Cty.); *Knopp v. Butterfield*, 1:20-cv-00566-LPS (D. Del.); *Kirchmann v. Butterfield*, 1:20-cv-00567-LPS (D. Del.); *Gorenberg v. Butterfield*, 1:20-cv-00625-LPS (D. Del.).  All of these cases depend to varying degrees on whether Plaintiff has standing here.  Many commenters and companies considering going public through a direct listing are watching closely as well.  Mot. at 3; *see* Kahn Decl. Exs. A-D.

### III.    CONCLUSION

The Court's Order is an important, thoughtful decision.  Although Defendants respectfully disagree with it, their disagreement is not the reason they believe certification for interlocutory review is appropriate.  To the contrary, it is precisely because the Order carefully and thoroughly addressed significant and novel legal issues that have broad impact on securities law that review is warranted.  Immediate resolution of these issues will speed this case to a conclusion, and will assist the broader legal and financial communities in understanding their responsibilities.  For these reasons, and the reasons stated in the Motion, the Court should certify its Order for immediate interlocutory appeal.

DATED: May 26, 2020

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Michael D. Celio*
MICHAEL D. CELIO, SBN 197998
RAENA FERRER CALUBAQUIB, SBN 328794
1881 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

Gibson, Dunn & Crutcher LLP

9

MATTHEW S. KAHN, SBN 261679
MICHAEL J. KAHN, SBN 303289
555 Mission St. Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendants Slack Technologies, Inc., Stewart Butterfield, Allen Shim, Brandon Zell, Andrew Braccia, Edith Cooper, Sarah Friar, John O'Farrell, Chamath Palihapitiya, Graham Smith, Accel Growth Fund IV Associates L.L.C., Accel Growth Fund Investors 2016 L.L.C., Accel Leaders Fund Associates L.L.C., Accel Leaders Fund Investors 2016 L.L.C., Accel X Associates L.L.C., Accel Investors 2009 L.L.C., Accel XI Associates L.L.C., Accel Investors 2013 L.L.C., Accel Growth Fund III Associates L.L.C., AH Equity Partners I L.L.C., A16Z Seed-III LLC, Social+Capital Partnership GP II L.P., Social+Capital Partnership GP II Ltd., Social+Capital Partnership GP III L.P., Social+Capital Partnership GP III Ltd., Social+Capital Partnership Opportunities Fund GP L.P., and Social+Capital Partnership Opportunities Fund GP Ltd.*

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY ISO MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
CASE NO. 3:19-cv-05857-SI