# Exhibit 2

Electronically
FILED
by Superior Court of California, County of San Mateo
ON 12/30/2019
By___/s/ Jennifer Tannous___
Deputy Clerk

GIBSON, DUNN & CRUTCHER LLP
MICHAEL D. CELIO, SBN 197998
1881 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MATTHEW S. KAHN, SBN 261679
MICHAEL J. KAHN, SBN 303289
555 Mission St. Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendants*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

| | |
|---|---|
| IN RE SLACK TECHNOLOGIES, INC. SHAREHOLDER LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Lead Case No. 19-CIV-05370<br><br>(Consolidated with Case Nos. 19-CIV-05411, 19-CIV-05674, 19-CIV-06181, 19-CIV-05784, 19-CIV-05840)<br><br>CLASS ACTION<br><br>Assigned for All Purposes to the Honorable Marie S. Weiner, Department 2<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:    February 25, 2020<br>Hearing Time:    2:00 p.m.<br>Department:    2<br>Honorable Judge:    Marie S. Weiner<br><br>Complaint Filed:    September 12, 2019 |

Gibson, Dunn & Crutcher LLP

DEFENDANTS' MOTION TO STAY PROCEEDINGS
CASE NO. 19-CIV-05370

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 25, 2020 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Department 2 of the San Mateo County Superior Court, located at 400 County Center, Redwood City, CA 94063, Defendants Slack Technologies, Inc. ("Slack"), Stewart Butterfield, Allen Shim, Brandon Zell, Andrew Braccia, Edith Cooper, Sarah Friar, John O'Farrell, Chamath Palihapitiya, Graham Smith, Accel Growth Fund III Associates L.L.C., Accel Growth Fund III L.P., Accel X Associates L.L.C., Accel X L.P., Accel XI Associates, L.L.C., and Accel XI L.P.[1] will and hereby do move for an order staying all proceedings in this action until the resolution of the duplicative putative class action pending before the Honorable Susan Illston of the United States District Court for the Northern District of California in the action *Dennee v. Slack Technologies, Inc.*, Case No. 3:19-cv-05857-SI (the "Federal Action").

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Michael J. Kahn ("Kahn Decl.") and all exhibits thereto, all papers, documents, and pleadings on file herein, and upon any further argument or evidence that may be presented in connection with this Motion.

DATED: December 30, 2019

GIBSON, DUNN & CRUTCHER, LLP

By: /s/ Michael D. Celio
MICHAEL D. CELIO, SBN 197998
1881 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MATTHEW S. KAHN, SBN 261679
MICHAEL J. KAHN, SBN 303289
555 Mission St. Suite 3000
San Francisco, California 94105

---

[1] The initial complaints in this matter also named Robert Frati, David Schellhase, Callum Henderson, Accel X Strategic Partners L.P., Accel Investors 2009 L.L.C., AH Parallel Fund IV, L.P., Andreessen Horowitz Fund I L.P., AH Equity Partners III, L.L.C., the Social+Capital Partnership II, L.P., the Social+Capital Partnership III, L.P., and the Social+Capital Partnership Opportunities Fund, L.P. as defendants. The Consolidated Complaint, filed December 20, 2019, has removed these individuals and entities as defendants.

Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendants*

DEFENDANTS' MOTION TO STAY PROCEEDINGS
CASE NO. 19-CIV-05370

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...........................................................................................................7

II.     RELEVANT FACTUAL BACKGROUND.................................................................9

        A.      The Direct Listing ...........................................................................................9

        B.      The Federal Action.........................................................................................11

        C.      Actions Filed In This Court ...........................................................................11

III.    ARGUMENT ...............................................................................................................12

        A.      A Stay is Necessary To Avoid Inconsistent Judgments And "Unseemly"
                Conflict With The Federal Court. ..................................................................13

        B.      Principles Of "Restraint" And "Comity" Support A Stay. ............................16

        C.      The Court Should Stay This Action To Avoid Duplicative Litigation That
                Would Waste Judicial Resources And Needlessly Burden The Parties..........18

IV.     CONCLUSION ............................................................................................................19

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO STAY PROCEEDINGS
CASE NO. 19-CIV-05370

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Archibald v. Cinerama Hotels* (1976)
15 Cal.3d 853 ..........................................................................................................12

*Berg v. MTC Electronics Technologies Co.* (1998)
61 Cal.App.4th 349 .............................................................................................12, 18

*In re Bloom Energy Securities Litigation*
(Santa Clara Cty. Super. Ct.) Case No. 19CV344894 .......................................16, 17

*Caiafa Prof. Law Corp. v. State Farm Fire & Casualty Co.* (1993)
15 Cal.App.4th 800 ...........................................................8, 12, 15, 16, 17, 18

*In re Century Aluminum Co. Securities Litigation* (9th Cir. 2013)
729 F.3d 1104 ..........................................................................................................13

*Century Indemnity Co. v. Bank of Am.* (1997)
58 Cal.App.4th 408 ...................................................................................................12

*Clark's Fork Reclamation Dist. No. 2069 v. Johns* (1968)
259 Cal.App.2d 366 ..................................................................................................16

*Cottle v. Superior Court* (1992)
3 Cal.App.4th 1367, opn. mod. (Mar. 20, 1992)......................................................12

*Dennee v. Slack Technologies, Inc.*
(N.D. Cal.) Case No. 3:19-cv-05857-SI....................................................................11

*Farmland Irrigation Co. v. Dopplmaier* (1957)
48 Cal.2d 208 .....................................................................................................12, 14

*Freiberg v. City of Mission Viejo* (1995)
33 Cal.App.4th 1484 .................................................................................................12

*Harper v Smart Technologies, Inc.* (San Francisco Cty. Super. Ct. May 17, 2013)
2013 WL 9745482 .....................................................................................................18

*Ryan v. Gifford* (Del. Ch. 2007)
918 A.2d 341 .............................................................................................................17

*Schneider v. Vennard* (1986)
183 Cal.App.3d 1340 ...........................................................................................12, 18

*Simmons v. Superior Court* (1950)
96 Cal.App.2d 119 .............................................................................12, 14, 15, 17, 18

*Thomson v. Continental Ins. Co.* (1967)
66 Cal.2d 738 ........................................................................................9, 12, 14, 17

*West Virginia Laborers' Trust Fund v. STEC, Inc.* (Orange Cty. Super. Ct. Feb. 17,
2012)
2012 WL 12806605 ..............................................................................................15, 18

DEFENDANTS' MOTION TO STAY PROCEEDINGS
CASE NO. 19-CIV-05370

**TABLE OF AUTHORITIES**
(*continued*)

**Statutes**                                                                                                    Page(s)

15 U.S.C., § 77k(e) ...............................................................................................................13

15 U.S.C., § 77k(g) ...............................................................................................................13

**Other Authorities**

N.Y. Stock Exchange, "Ways to List" <https://www.nyse.com/network/article/ways-
to-list> [as of December 19, 2019] ..................................................................................9

DEFENDANTS' MOTION TO STAY PROCEEDINGS
CASE NO. 19-CIV-05370

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

This is not an ordinary securities case, and this is not an ordinary motion to stay.  This case presents issues of first impression under the federal securities laws.  No court has ever confronted the central question presented by Plaintiffs' claims:  whether Section 11 of the Securities Act of 1933 ("Securities Act") permits a lawsuit against a company like Slack that did *not* sell any shares on the open market but rather went public through a new (and increasingly popular) process called a "direct listing."  Currently, identical claims against Slack are pending both in this Court and before Judge Susan Illston of the United States District Court for the Northern District of California in the Federal Action.  While there is no question that California courts, and this Court in particular, are fully qualified to interpret the Securities Act and answer this and related novel questions of federal law presented by Plaintiffs' first-of-their-kind claims, Defendants respectfully submit that the first court to speak on these federal issues should be a federal one.  Judge Illston will shortly hear a motion to dismiss the Federal Action raising these novel issues of federal law.  Accordingly, this action should be stayed pending resolution of the Federal Action.

As Plaintiffs concede, Slack did not do an initial public offering ("IPO").  (See Consolidated Complaint, ¶ 3 (Dec. 20, 2019).)  Instead, Slack became a public company via a direct listing; indeed, Slack is only the second prominent company ever to have done so.  The key difference between an IPO and a direct listing is that Slack did not sell shares, and did not make a single cent in the process.  Instead, it simply made it possible for *existing* stockholders—including those who must register their shares under a registration statement and those who are not required to register their shares—to sell *their* shares to the public if they so chose.  Further, the decision to sell or not to sell was entirely in the hands of those stockholders.  As a result, there is a very strong argument that Section 11 of the Securities Act simply does not apply here.  Among other reasons, stockholders suing under Section 11 may never be able to establish statutory standing by tracing their shares to the allegedly misleading registration statement because both registered *and* unregistered shares are available for sale in a direct listing.  This argument is so strong that even members of the plaintiffs' bar have admitted that it is "compelling."  (Kahn Decl. Ex. F at p. 3.)

DEFENDANTS' MOTION TO STAY PROCEEDINGS
CASE NO. 19-CIV-05370

Gibson, Dunn &
Crutcher LLP

The point of *this* motion, however, is not to seek a determination of these novel questions of federal law. The point, instead, is to ask this Court to exercise its discretion to permit Judge Illston to decide these issues in the first instance. The plaintiff in the Federal Action asserts the identical claims as Plaintiffs here, attacking Slack's direct listing based on Section 11. (Kahn Decl. Ex. C.) Defendants have already moved to dismiss the Federal Action (*id.*, Ex. D), and the parties will be finished briefing the motion to dismiss an amended complaint by February 21, 2020 (*id.*, Ex. E), well before this Court will hear Defendants' demurrers in April 2020.

Defendants believe that they are correct in their interpretation of Section 11, but they also freely acknowledge that the factual situation and arguments—all identical in both this case and the Federal Action—are entirely novel. No court has ever addressed the legal implications of a direct listing. Defendants hope to prevail, but the federal court might disagree; the result is uncertain. That uncertainty has important implications, which warrant a stay for three reasons.

*First*, because reasonable jurists could come to different conclusions about these important and novel issues of federal law, if this case proceeds in this Court and the federal court concurrently, there is a very real chance that the same company, Slack, could receive conflicting decisions from two different courts on the same facts. In most cases with parallel proceedings involving federal law, this risk, while significant, is mitigated by the fact that the relevant federal statutes have been extensively interpreted in the given fact patterns by higher federal courts. In other words, binding appellate precedent exists to guide the relevant trial courts. Here, by contrast, the risk of this Court and the federal court reaching different results is very real and substantial because no such appellate guidance—indeed, no guidance of any kind from any court—yet exists. Accordingly, this Court should exercise its discretion to allow the federal court to resolve these novel federal legal questions before this case proceeds here to avoid inconsistent judgments. (See, e.g., *Caiafa Prof. Law Corp. v. State Farm Fire & Casualty Co.* (1993) 15 Cal.App.4th 800, 806-807 [stay pending resolution of federal action was appropriate "for the purpose of 'avoiding unseemly conflicts with the courts of other jurisdictions,'" which were "quite likely" to occur absent a stay].)

*Second*, the fact that the novel legal issues here are federal in nature also weighs in favor of a stay. While this Court has concurrent jurisdiction over federal securities claims (not to mention

DEFENDANTS' MOTION TO STAY PROCEEDINGS
CASE NO. 19-CIV-05370

extensive experience on the issues), the same can be said of Judge Illston and the federal court. And no matter how these legal issues are resolved, there is sure to be an appeal. Especially in light of California's "strong policy of comity" (*Thomson v. Continental Ins. Co.* (1967) 66 Cal.2d 738, 747), it is more appropriate and efficient for the federal courts (including the Ninth Circuit and, if necessary, the United Stated Supreme Court) to resolve these issues in the first instance rather than the California courts.

*Third*, all the other traditional factors support a stay. The Federal Action was filed contemporaneously with this action (in fact, before some of the now-consolidated cases were filed) and it is further along procedurally, with a dispositive-motion briefing schedule that is months ahead of the one in this case. Additionally, because the Federal Action is pending in California, witnesses are equally available in that action. And finally, a stay would promote judicial economy and efficiency by avoiding the waste of court and party resources that would occur if these duplicative class actions proceed in parallel. Accordingly, Defendants respectfully request that this Court stay this action pending resolution of the Federal Action.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The Direct Listing

Slack became a public company in June 2019 when its shares of Class A common stock were listed on the New York Stock Exchange ("NYSE") through a unique, non-traditional process known as a direct listing. (See generally Kahn Decl. Ex. A at 46-47, 171-172.) A direct listing is a process that "allows companies to list their shares directly and begin trading publicly on the NYSE, without issuing new shares via a traditional initial public offering." (N.Y. Stock Exchange, "Ways to List" <https://www.nyse.com/network/article/ways-to-list> [as of December 19, 2019].) A direct listing "is an option for private companies that do not have an immediate need to raise capital, but wish to provide liquidity for their existing shareholders while creating a publicly traded company." (*Ibid.*) In a direct listing, a registration statement is filed with the Securities and Exchange Commission ("SEC") "solely for the purpose of allowing existing shareholders to sell their shares." (See Kahn Decl. Ex. B at § 102.01B, fn. E .) As lawyers from plaintiffs' firm Labaton Sucharow agreed in an article they authored about Slack this month, these features (among others) make direct listings quite

"unlike traditional IPOs."  (Kahn Decl. Ex. F at p. 2.)

Slack's decision to go public via a direct listing has several important implications that distinguish it from companies that become publicly traded via an IPO.  *First*, Slack neither sold any of its own shares nor offered them to the public at any price.  (Kahn Decl. Ex. A, cover page; *id.* at p. 58.)  Instead, the direct listing merely permitted existing registered stockholders and unregistered stockholders to sell their shares to the public through brokerage transactions on the NYSE.  (*Id.* at p. 171.)  *Second*, because Slack did not sell any of its own shares, Slack did not receive any proceeds from the sale of shares of Class A common stock by the existing stockholders.  (*Id.* at p. 58.)  *Third*, there was no guarantee that any Slack shares would be available for purchase when Slack went public because existing registered and unregistered stockholders, not Slack, decided whether or not to sell their shares.  (*Id.* at p. 46 ["There is not a fixed or determined number of shares of Class A common stock available for sale" and "there can be no assurance that any Registered Stockholders or other existing stockholders will sell any of their shares"].)  *Fourth*, Slack's stockholders did not enter into contractual lock-up agreements as is customary in IPOs, so "any of [Slack's] stockholders . . . [could] sell any or all of their shares . . . immediately upon listing."  (*Ibid.*)  Thus, "[f]ollowing the listing of [Slack's] Class A common stock on the NYSE, shares of [Slack's] Class A common stock [could] be sold either by the Registered Stockholders pursuant to [Slack's] prospectus *or by [Slack's] other existing stockholders* in accordance with Rule 144 of the Securities Act."  (*Id.* at p. 164 [emphasis added].)  Accordingly, not only were 118,429,640 registered shares available for sale at the time of the direct listing, but so were "approximately 164,932,646 shares" *exempt from registration* under SEC Rule 144.  (*Ibid.*)  As discussed below, this latter fact is critically important to the analysis of whether and how Section 11 applies here.

As part of the direct listing process, Slack issued a registration statement disclosing information about its business and the risks of purchasing shares of Slack stock (the "Registration Statement").  The Registration Statement contained hundreds of pages of disclosures about Slack and its business, including 41 pages of detailed "Risk Factors."  (Kahn Decl. Ex. A at pp. 13-54.)

DEFENDANTS' MOTION TO STAY PROCEEDINGS
CASE NO. 19-CIV-05370

**B.       The Federal Action**

On September 19, 2019, a putative class action complaint was filed against Slack and certain of its directors and officers in the United States District Court for the Northern District of California, asserting claims under Sections 11 and 15 of the Securities Act.  (See *Dennee v. Slack Technologies, Inc.* (N.D. Cal.) Case No. 3:19-cv-05857-SI.)  The complaint claims that Slack's Registration Statement was false and/or misleading.  (Kahn Decl. Ex. C, ¶ 39.)  The complaint purports to assert claims on behalf of a class of all "persons and entities that purchased or otherwise acquired Slack Class A common stock pursuant and/or traceable to the Company's registration statement and prospectus" issued in connection with the direct listing.  (*Id.*, ¶ 1.)  The Federal Action is pending before the Honorable Susan Illston.

On November 8, 2019, defendants—who are all defendants in this action as well—filed a motion to dismiss the Federal Action for failure to state a claim upon which relief may be granted. (Kahn Decl. Ex. D.)  Defendants argued that plaintiff (1) did not and could not plead that his shares are traceable to the Registration Statement because, *inter alia*, there were far more *unregistered* Slack shares than registered shares made available to the market as part of the direct listing (*id.* at pp. 7-9); (2) failed to plead that the Registration Statement was false or misleading given Slack's robust disclosures (*id.* at pp. 9-14); and (3) did not and could not plead damages because Section 11 damages require a public offering, but Slack did not offer any shares as part of its direct listing (*id.* at pp. 15-16).  The presumptive lead plaintiff intends to file an amended complaint in early January 2020, and the motion to dismiss briefing on the amended complaint will be completed by February 21, 2020.  (Kahn Decl. Ex. E.)

**C.       Actions Filed In This Court**

Between September 12 and October 18, 2019, six putative securities class actions were filed in this Court.  These six actions were consolidated on November 22, 2019.  A consolidated complaint was filed on December 20, 2019, and demurrer briefing is scheduled to be completed in April 2020 with a hearing set for April 17, 2020.  This action is identical to the Federal Action.  Like the Federal Action, the consolidated complaint filed in this Court asserts claims under Sections 11 and 15 of the

Securities Act and alleges that Slack's Registration Statement is false and/or misleading based on the same disclosures attacked in the Federal Action. (See Consolidated Complaint.)

### III.     ARGUMENT

Trial courts have "the inherent power to stay proceedings in the interests of justice and to promote judicial efficiency." (*Freiberg v. City of Mission Viejo* (1995) 33 Cal.App.4th 1484, 1489; see also *Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1380, opn. mod. (Mar. 20, 1992) [courts have broad power to fashion appropriate measures to manage complex cases].) "It is black letter law that, when a federal action has been filed covering the same subject matter as is involved in a California action, the California court has the discretion . . . to stay the state court action." (*Caiafa*, *supra*, 15 Cal.App.4th at p. 804.)

In ruling on a motion to stay, "the trial court can take into account any consideration which bears on the relative suitability or convenience of the two forums." (*Century Indemnity Co. v. Bank of Am.* (1997) 58 Cal.App.4th 408, 411-412 [citing *Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 860].) For purposes of this motion, the most important factors this Court should consider "'[i]n exercising its discretion'" are (1) "'the importance . . . of avoiding unseemly conflicts with the courts of other jurisdictions'" (*Caiafa*, *supra*, 15 Cal.App.4th at p. 804 [quoting *Farmland Irrigation Co. v. Dopplmaier* (1957) 48 Cal.2d 208, 215]); (2) the federal "nature of the subject matter" (*ibid.*) along with the "strong policy of comity" owed to federal courts (*Thomson*, *supra*, 66 Cal.2d at 747; see also *Simmons v. Superior Court* (1950) 96 Cal.App.2d 119, 130 [reversing order denying motion to stay "as a matter of comity"]); and (3) promoting judicial economy and avoiding the burdens imposed by parallel class actions (*Schneider v. Vennard* (1986) 183 Cal.App.3d 1340, 1350).

These factors support staying this action in favor of the essentially identical Federal Action. (See *Thomson*, *supra*, 66 Cal.2d at p. 746 fn.5 [actions need only be "closely related" and "not . . . identical" to justify a stay]; *Berg v. MTC Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 363 [affirming stay order "[a]lthough the instant action is not precisely identical to any of the other actions"].) Most critically, a stay is necessary to avoid the risk of inconsistent judgments by this Court and the federal court regarding the applicability of Section 11 to claims arising out of a direct listing as compared to an IPO, a novel issue that no court has yet addressed.

**A.    A Stay is Necessary To Avoid Inconsistent Judgments And "Unseemly" Conflict With The Federal Court.**

The first and most compelling reason this Court should stay this action is to avoid the significant risk of conflicting judgments on novel legal questions.  These lawsuits present multiple issues of first impression regarding the application of the federal securities laws to direct listings like Slack's.  For example, these suits pose the novel question of whether stockholders who purchase shares in a direct listing can *ever* establish standing under Section 11 of the Securities Act by tracing their shares to the allegedly misleading registration statement, given that both unregistered *and* registered shares are available for purchase following a direct listing.  (See Kahn Decl. Ex. D at pp. 7-9.)  A plaintiff may assert a Section 11 claim *only* if she can "trace" her shares to an allegedly misleading registration statement.  (*In re Century Aluminum Co. Securities Litigation* (9th Cir. 2013) 729 F.3d 1104, 1106.)  But such tracing is impossible when the market contains shares beyond those issued under the registration statement in question.  (See *id.* at p. 1107.)  Here, both registered and unregistered shares were available for sale upon Slack's direct listing—indeed, there were *more* unregistered shares available than registered ones—and sales were conducted through anonymizing brokerage transactions on the NYSE.  (*Supra* at 9.)  It is impossible to trace shares in these circumstances, and as a result both this Court and the federal court in the Federal Action will have to adjudicate whether Section 11 claims can ever be asserted by stockholders who purchase shares in a direct listing like Slack's.  (See also Kahn Decl. Ex. F at p. 3 [Labaton Sucharow agreeing that Defendants' argument that "any putative plaintiff will be unable to establish traceability at the pleading stage" is "compelling"].)

These lawsuits also require determination of whether damages are ever recoverable under Section 11 in connection with a direct listing.  A necessary predicate for establishing Section 11 damages is the existence of a price at which a security is "offered to the public."  (See 15 U.S.C. § 77k(e); *id.* § 77k(g) ["In no case shall the amount recoverable under this section exceed the price at which the security was offered to the public."].)  In an IPO, that price is easy to determine:  it is the price at which the company offers its shares for sale on the first day of trading.  But in a direct listing, *there is no initial public offering price.* (Kahn Decl. Ex. A at p. 172; *id.*, cover page [noting that the

"proposed maximum offering price per share" was "not applicable"].)  Further, none of the Defendants had any direct role in establishing the pricing of shares of Slack stock.  Instead, the NYSE established a reference price for Slack's shares one day prior to the commencement of trading (*id.* at p. 58), and a designated market maker set the opening trading price "without coordination with" Slack.  (*Id.* at p. 47; see generally *id.* at pp. 171-172 [explaining the direct listing process].)  Because Slack's direct listing did not involve a public offering or a public offering price, these lawsuits require adjudication of whether the plaintiffs can recover *any* damages under Section 11.

This action should be stayed to avoid the patent risks of conflicting decisions by this Court and the federal court on these novel legal questions.  Because the claims, allegations, and parties in this action are substantially the same as those in the Federal Action, it is by definition unavoidable that this Court and the federal court will be required to rule on the same factual and legal issues.  While of course potential conflicts are theoretically a risk in every parallel action, the risk is far more than theoretical in this case given the completely novel issues of federal law presented by Slack's direct listing.  These are issues of first impression on which there is no direct legal authority, and accordingly the risk of inconsistent rulings is far higher than in a typical case involving parallel state and federal actions where there is at least some precedent (often, well-established precedent from the United States Supreme Court) to guide the courts' rulings.  There is therefore a significant risk that this Court and the federal court will reach *different* results on the *same* exact facts—namely, the application of Section 11 to Slack's direct listing and the various plaintiffs' purchases of Slack stock from registered and unregistered stockholders.

Under these circumstances, the Court should stay this action.  California courts have long emphasized the importance of avoiding inconsistent rulings with sister courts.  In *Simmons*—which the California Supreme Court has repeatedly relied on in its stay rulings (see, e.g., *Thomson*, *supra*, 66 Cal.2d at pp. 746-747; *Farmland*, *supra*, 48 Cal.2d at p. 215)—the Court of Appeal reversed a trial court order denying a stay in favor of a substantially similar action pending in Texas.  (*Simmons*, *supra*, 96 Cal.App.2d at p. 133.)  In reaching its ruling, the Court of Appeal explained that stays serve the vital purpose of "avoid[ing] a multiplicity of suits and prevent[ing] vexatious litigation, conflicting judgments, confusion and unseemly controversy between litigants and courts." (*Id.* at p.

125.)  "Equity abhors a multiplicity of actions," "[c]ourts should not be in collision," and "[r]aces between parties likely to result in unseemly controversy between courts of different states should be frowned upon and avoided if possible." (*Id.* at p. 130.)  Simply put, "[a] conflict of authority should not occur if it can be avoided." (*Ibid.*)

Following these principles, California courts frequently stay proceedings in favor of substantially similar federal actions.  For example, in *Caiafa*, the Court of Appeal upheld the trial court's decision to stay an action seeking attorney's fees in favor of a parallel federal action that would necessarily decide that same issue. (*supra*, 15 Cal.App.4th at p. 807.)  State Farm brought a RICO suit in federal court against Douglas Caiafa and other defendants alleging that the defendants defrauded State Farm by submitting padded legal bills. (*Id.* at p. 802.)  Caiafa subsequently filed a petition to compel State Farm to arbitrate his unpaid legal fees. (*Id.* at pp. 802-803.)  Under these circumstances, the Court of Appeal held that "[t]he potential for 'unseemly conflict' is great, unless both forums should reach the exact same resolution of the issues," because the two adjudicators could reach different results on the same attorney's fees issue. (*Id.* at pp. 806-807.)  The necessity for a stay was so clear that the Court of Appeal stated "it is difficult for us to see how the trial court could have exercised its discretion in any other way." (*Id.* at p. 807.)

Similarly, the court in *West Virginia Laborers' Trust Fund v. STEC, Inc.* (Orange Cty. Super. Ct. Feb. 17, 2012) 2012 WL 12806605 stayed a putative securities class action to avoid potential conflicts with a substantially similar federal action.  In that case, plaintiff, a shareholder of STEC, alleged that it was harmed by false statements contained in STEC's registration statement and prospectus. (*Id.* at p. *1.)  A parallel federal action had been filed against STEC as well. (*Ibid.*)  Even though the state court plaintiff was "not [] a party to the federal action," the court stayed the state court action in favor of the federal action because "the issue being decided in the federal action includes Plaintiffs' claim here as to the truthfulness of the disclosures made by Defendant in the prospectus and form 10-Q and the potential exists for inconsistent rulings and unseemly conflict." (*Ibid.*)

A substantially similar opinion granting a motion to stay was issued this month by Judge Brian Walsh of the Santa Clara County Superior Court in the putative securities class action *In re*

*Bloom Energy Securities Litigation* (Santa Clara Cty. Super. Ct.) Case No. 19CV344894. (Kahn Decl. Ex. G.) There, defendants moved to stay the earlier-filed state court action in favor of the later-filed federal action, both of which challenged Bloom's disclosures in connection with its IPO. (*Id.* at p. 3.) Despite giving "weight to plaintiffs' choice of forum and right to proceed with their case," the court granted defendants' motion to stay because, among other reasons, "there would be a real risk of unseemly conflict were this Court to rule on a demurrer during the same timeframe that the motion to dismiss in [the federal action] is litigated" "due to the identical claims and theories at issue in the two actions." (*Id.* at p. 6.)

Like those cases, this action also should be stayed to avoid conflicting rulings on the novel federal securities law issues raised by Plaintiffs' claims. Without a stay in place, both this Court and the federal court will be asked to rule on the identical issues regarding the application of the securities laws to direct listings like Slack's, and "unless both forums should reach the exact same resolution of the issues," Slack and the other Defendants here will face inconsistent judgments. (See *Caiafa*, *supra*, 15 Cal.App.4th at p. 807.) Defendants' motion to stay accordingly should be granted.

**B.      Principles Of "Restraint" And "Comity" Support A Stay.**

This action also should be stayed to permit the federal court system to first decide the novel federal legal issues presented in this case. The presence of issues that "turn wholly on questions of federal law"—as in this case—"strongly suggest the advisability of restraint by California courts." (*Clark's Fork Reclamation Dist. No. 2069 v. Johns* (1968) 259 Cal.App.2d 366, 369.) In *Clark's*, there was both state and federal litigation over a water rights dispute involving contracts with the federal government that turned on questions of federal reclamation law. (*Id.* at pp. 367-368.) The Court of Appeal held that "[t]he problem here presented can best be determined in the pending federal action," including "because the issues argued turn wholly on federal law." (*Id.* at p. 370.) Judge Walsh reached the same conclusion in *Bloom*, holding that "the federal nature of the claims [] weighs in favor of a stay" even though he "has jurisdiction over the Securities Act claims . . . and is fully competent to hear them." (Kahn Decl. Ex. G at p. 6.) Not only does the same hold true here, but the claims in this action suggest an even *greater* need for "restraint by California courts" (*Clark's*, *supra*, 259 Cal.App.2d at p. 369) because this litigation presents issues of federal law that,

to Defendants' knowledge, have *never* been addressed or decided by any court.  In these circumstances, the best course of action is to allow the federal court system to adjudicate these issues first (including allowing the Ninth Circuit to first resolve any appeals involving these novel questions of law).  (Cf. *Ryan v. Gifford* (Del. Ch. 2007) 918 A.2d 341, 350 [holding that "questions of first impression under Delaware law" should be decided in later-filed Delaware action instead of earlier-filed federal action].)

For similar reasons, the "strong policy of comity" owed to federal courts warrants a stay. (*Thomson*, *supra*, 66 Cal.2d at p. 747.)  California courts recognize that "[i]t is the duty of the court to give preference to principles and methods of procedure" that enable sister courts to "co-operate as harmonious members of the judicial system."  (See *Simmons*, *supra*, 96 Cal.App.2d at p. 130.)  These principles of comity tilt strongly in favor of a stay to allow the federal courts to decide the novel issues of federal law presented by this action in the first instance before California courts weigh in on them.

Additionally, both the relative advancement of the Federal Action, and the fact that the Federal Action is pending in California, weigh in favor of a stay.  (See *Caiafa*, *supra*, 15 Cal.App.4th at p. 804.)  The Federal Action is more advanced than this action.  Defendants filed their first motion to dismiss the Federal Action in November 2019, and the parties will finish briefing Defendants' motion to dismiss the amended complaint by February 21, 2020.  (See *supra* at 10.)  "[T]his weighs in favor of a stay."  (*Bloom*, Kahn Decl. Ex. G at pp. 4, 6 [staying action where federal motion to dismiss would be fully briefed approximately five months later].)  The Federal Action also is pending in California, which means that witnesses are equally available in both this action and the Federal Action.  "This factor is one which the Supreme Court found so important it accounted for the several earlier California decisions which appeared to make a stay of state court proceedings a matter of right not merely a matter of discretion."  (*Caiafa*, *supra*, 15 Cal.App.4th at p. 807; *ibid*. ["our high court [] recognized the significance of this factor in the trial court's exercise of its discretion"].)  All of these factors warrant a stay of these proceedings.

**C.    The Court Should Stay This Action To Avoid Duplicative Litigation That Would Waste Judicial Resources And Needlessly Burden The Parties.**

Finally, because there are no material differences between this case and the Federal Action, proceeding in parallel would unnecessarily duplicate the efforts of the courts and the parties.  Courts regularly stay cases in these circumstances to avoid "the burdens and inefficiencies that would be imposed by the conduct of parallel litigations."  (See, e.g., *Berg*, *supra*, 61 Cal.App.4th at p. 363; *Simmons*, *supra*, 96 Cal.App.2d at p. 128 [duplicative proceedings "would be unfair to the [moving party] and equally so to the courts"].)  It does not make sense to have both this Court and Judge Illston considering and ruling upon the exact same issues.  Additionally, the Federal Action "may well resolve the issues [Plaintiffs] seeks to decide . . . in state court" and render this proceeding "entirely unnecessary."  (*Caiafa*, *supra*, 15 Cal.App.4th at p. 807.)  It is indisputable that permitting both actions to proceed in parallel would result in inefficiencies.

A stay is particularly appropriate here because both this action and the Federal Action are putative class actions.  Because class actions are complex, require additional proceedings (*e.g.*, class certification), and demand substantial time and resources, allowing both this action and the Federal Action to proceed in parallel "does not serve the public interest" because it "would increase the burdens on two already overburdened courts."  (See *Schneider*, *supra*, 183 Cal.App.3d at 1350.)  Permitting both actions to go forward would also harm the putative class of Slack investors.  "Additional litigation would require greater attorneys' resources and possibly higher attorney's fees, thus reducing the amount of recovery," and "[t]wo class actions would require two sets of notices which would have the potential for confusing class members."  (See *id.* at pp. 1349-1350.)  For these reasons, California courts often stay securities cases like this one in favor of parallel federal actions.  (See, e.g., *Harper v Smart Technologies, Inc.* (San Francisco Cty. Super. Ct. May 17, 2013) 2013 WL 9745482, at *2 [staying Securities Act case because "[a]llowing this case to proceed alongside the parallel Federal Action would not only place undue burdens on the courts, but might prove detrimental to the plaintiffs, potential class members, and defendants, and would do violence to considerations of judicial economy and efficiency"]; *STEC*, *supra*, 2012 WL 12806605, at *1.)  There is no good reason to have two identical class actions pending in two different courts at the

same time.  This Court should therefore stay this proceeding to promote judicial economy and avoid waste.

## IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court order a stay of all proceedings pending the resolution of the Federal Action.

DATED: December 30, 2019

GIBSON, DUNN & CRUTCHER, LLP

By: /s/ Michael D. Celio
MICHAEL D. CELIO, SBN 197998
1881 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MATTHEW S. KAHN, SBN 261679
MICHAEL J. KAHN, SBN 303289
555 Mission St. Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendants*